652 F.2d 904
 26 Fair Empl.Prac.Cas. 721,
26 Empl. Prac. Dec. P 32,063,
2 Employee Benefits Ca 1770
Marie MANHART, Carolyn Mayshack, Margerie Stoop, Alice F.
Muller and Ethel L. Lehman, individually and on behalf of
all other persons similarly situated; Committee to Protect
Women's Retirement Benefits; and International Brotherhood
of Electrical Workers, Local Union No. 18, Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES, DEPARTMENT OF WATER AND POWER, a body
corporate and politic; Members of the Board of Water and
Power Commissioners of the Department of Water and Power,
City of Los Angeles; Members of the Board of Administration
of the Department of Water and Power Employees' Retirement,
Disability and Death Benefits Insurance Plan; Henry G.
Bodkin, Jr.; Katherine B. Dunlap; Burton J. Gindler; Michael
Glazer; Herbert C. Ward; Louis J. Weidner, Jr.; Ralph E.
Powell; Leo W. Sudmeier, Jr.; William D. Sachau; and Robert
V. Phillips, Defendants-Appellants.
 No. 79-3225.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1981.
Decided Aug. 7, 1981.
Rehearing and Rehearing En Banc Denied Nov. 16, 1981.
 
 David J. Oliphant, Deputy City Atty., Los Angeles, Cal., for defendants-appellants.
 Howard M. Knee, Schwartz, Steinsapir, Dohrmann & Krepack, Los Angeles, Cal., Katherine Stoll Burns, Woodland Hills, Cal., on brief; Robert M. Dohrmann, Los Angeles, Cal., argued, for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before KILKENNY, FLETCHER, and CANBY, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 This suit began as a class action brought on behalf of all women employed by the Los Angeles Department of Water and Power who had contributed to the department's pension fund. The suit alleged that the city discriminated against women by requiring them to contribute to the fund at a higher rate than male employees. The plaintiffs made claims under Title VII of the Civil Rights Act of 1964, § 1983 of the Civil Rights Act of 1866, the fourteenth amendment of the United States Constitution, and the California Constitution. They requested back pay and injunctive relief. The district court granted plaintiffs the relief sought under Title VII, but dismissed their other claims.
 
 
 2
 In Manhart v. City of Los Angeles, 553 F.2d 581 (9th Cir. 1976), this court upheld plaintiffs' Title VII claim on the merits. In turn, in Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court upheld plaintiffs' claim for injunctive relief, but denied the claim for back pay because "(r)etroactive liability could be devastating for a pension fund." Id. at 722, 98 S.Ct. at 1382. On remand, the district court awarded plaintiffs $165,000 in attorneys' fees. Defendants now appeal that award. We affirm the decision of the district court.
 
 PREVAILING PARTY
 
 3
 Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k), provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." The city argues that the plaintiffs in this action are not prevailing parties because their claim for damages was denied by the Supreme Court. We disagree. Plaintiffs should be considered prevailing parties so long as they prevail on " 'a significant issue in litigation which achieve(d) ... the benefit which the parties sought in bringing suit.' " Williams v. Alioto, 625 F.2d 845, 847 (9th Cir. 1980) (quoting Sethy v. Alameda County Water District, 602 F.2d 894, 897-98 (9th Cir. 1979), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980)).[1] By proving that the city had discriminated against them on the basis of gender, the plaintiffs prevailed on a significant issue in litigation. By securing an injunction to prohibit the city from continuing its discriminatory practice, they achieved a large part of the benefit which they sought. That is enough to make them prevailing parties for the purposes of § 706(k). Sethy v. Alameda County Water District, 602 F.2d at 897-98. This court has specifically held that a Title VII plaintiff who wins injunctive relief is a prevailing party under § 706(k), even though their claim for damages is denied. Rosenfeld v. Southern Pacific Co., 519 F.2d 527, 529 (9th Cir. 1975). Therefore, the plaintiffs in this action are prevailing parties to whom attorneys' fees may be awarded.
 
 AMOUNT OF ATTORNEYS' FEES
 
 4
 Determining the amount of attorneys' fees to be awarded is within the discretion of the district court. An award will be overturned only for an abuse of that discretion. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69 (9th Cir. 1975), cert. denied sub nom. Perkins v. Screen Extras Guild, Inc., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In Kerr, this court listed 12 factors to be considered in determining a reasonable attorney's fee, and stated that failure to consider the 12 factors is an abuse of discretion.
 
 
 5
 The record in this case does not contain a detailed analysis of the 12 factors by the district court. After a hearing on attorneys' fees, the district court stated the following conclusion:
 
 
 6
 I have reviewed, of course, the exhibits. I have had them for some time. I have studied the briefs of the parties. And, considering what I regard to be the relevant factors, I am now prepared to state what I regard to be reasonable attorneys' fees under Title VII.
 
 
 7
 In fixing those fees, I, of course, am taking into account the reasonable time spent by the attorneys, the complexity of the issues, the skill and experience of the attorneys, the results obtained, and the need to adequately compensate lawyers who take on Title VII cases. I have not sat down with a calculator and gone over each hour, and made a determination on an hour-by-hour or minute-by-minute basis applying to that time a reasonably hourly rate. I think that approach, which is mechanical, can lead, in some cases, to an unfair conclusion.
 
 
 8
 The court then awarded $135,000 in attorneys' fees to counsel for the union, and $30,000 to counsel for the individual plaintiffs.[2]
 
 
 9
 The city argues that the failure of the district court to make detailed findings was an abuse of discretion. We disagree. Kerr does not require the court to make precise calculations on the record. Kerr's requirements are met by "a recital of the facts and the guidelines considered in determining attorneys' fees." 526 F.2d at 70. The facts contained in the affidavits and briefs submitted by the parties are sufficiently detailed to provide a basis for the award. See Dennis v. Chang, 611 F.2d 1302, 1308 (9th Cir. 1980). An evidentiary hearing was not required. Williams v. Alioto, 625 F.2d at 849. The court emphasized five factors, approved by Kerr, on which it relied. Although we prefer a more detailed analysis than the brief statement made by the district court, it is not required. See Buxton v. Patel, 595 F.2d 1182, 1185 n.2 (9th Cir. 1979). A statement by the court that it has considered a Kerr factor suffices; the court is not required to detail the mechanics of its application. Dennis v. Chang, supra, 611 F.2d at 1308.
 
 
 10
 In Fountila v. Carter, 571 F.2d 487 (9th Cir. 1978), this court remanded for detailed findings when the district court noted on the record its method of calculating attorneys' fees, but failed to indicate any reasons for using that method. Id. at 496-97. In this case, however, the court omitted the method of calculation, but adequately identified the factors which entered into its judgment. A remand for findings is therefore unnecessary.
 
 
 11
 The city also argues that the award was excessive. We disagree. The award was clearly within the discretion of the district court. The plaintiffs presented evidence that their attorneys spent more than 1,400 hours over several years to prepare this case for presentation to the district court, the court of appeals, and the Supreme Court. The plaintiffs presented evidence of the prevailing rates charged by lawyers of similar skill and experience for comparable work. The calculated result was $125,000. Because of the special circumstances of this case, plaintiffs asked the court to multiply that result by 1.75, bringing their total request to $218,000. The affidavits of plaintiffs' experts indicated that such a request was reasonable.
 
 
 12
 The district court did not grant the entire amount requested, however. Instead, it settled upon a figure of $165,000. This decision merely recognized that the hours, with a few exceptions, and rates quoted by plaintiffs were reasonable, and that the upward adjustment was justified by the complexity of the case, the uncertainty of success, and the results obtained. This was within the district court's discretion. This case addressed a new and difficult issue. It undoubtedly required a large amount of time and effort.[3] Even those courts which favor use of a formula to calculate attorneys' fees allow the district court to consider those factors to award a higher fee than that produced by the formula. See Copeland v. Marshall, 641 F.2d 880, 892-94 (D.C.Cir.1980). The choice of a multiplier different from the one suggested by plaintiffs was not an abuse of discretion. These upward adjustments are necessarily imprecise, and are entrusted to the discretion of the district court because of that court's intimate knowledge of the proceedings. Id. at 893.
 
 
 13
 The award cannot be deemed excessive because it included fees for time spent in preparing those claims dismissed by the district court. It is true that no compensation may be paid for the time spent to prepare unrelated claims on which plaintiffs did not prevail. Sethy v. Alameda County Water District, 602 F.2d at 898. In this case, however, plaintiffs pursued several claims to remedy the same injury, gender discrimination. Under those circumstances, plaintiffs are entitled to an award for all time spent in pursuit of their ultimate goal. Copeland v. Marshall, 641 F.2d at 892 n.18; Lamphere v. Brown University, 610 F.2d 46, 47 (1st Cir. 1979); see Seattle School District v. Washington, 633 F.2d 1338, 1349 (9th Cir. 1980).
 
 
 14
 The award also cannot be deemed excessive because it allowed a higher fee than set by the agreement between the union and its attorneys. The statute authorizes payment of a reasonable fee, not the fee agreed upon by the parties and their attorneys. The fee agreed upon is therefore not decisive. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir. 1974); Clark v. American Marine Corp., 320 F.Supp. 709-711 (E.D.La.1970), aff'd, 437 F.2d 959 (5th Cir. 1971).
 
 
 15
 Finally, plaintiffs have requested attorneys' fees for time spent litigating the fees issue itself in district court and on appeal. They are entitled to such an award. Williams v. Alioto, 625 F.2d at 850; Rosenfeld v. Southern Pacific Co., 519 F.2d at 530; Johnson v. Mississippi, 606 F.2d 635, 638-39 (5th Cir. 1979). It would be inconsistent to dilute an award of fees by refusing to compensate an attorney for time spent to establish a reasonable fee. Lund v. Affleck, 587 F.2d 75, 77 (1st Cir. 1978). We therefore remand to the district court to determine a reasonable fee for time spent by plaintiffs' attorneys on this issue.
 
 
 16
 AFFIRMED.
 
 KILKENNY, Circuit Judge, dissenting:
 
 17
 The majority would add another case to the growing list of those that would penalize the public for making a legitimate challenge to the validity of a claim in a Title VII action. That the appellants had a legitimate reason for defending the action and pursuing the litigation through the courts is answered beyond all question by the Supreme Court's decision in the parent case, Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 719-20, 98 S.Ct. 1370, 1380-81, 55 L.Ed.2d 657 (1978), from which I quote:
 
 
 18
 "... Although we now have no doubt about the application of the statute in this case, we must recognize that conscientious and intelligent administrators of pension funds, who did not have the benefit of the extensive briefs and arguments presented to us, may well have assumed that a program like the Department's was entirely lawful. The courts had been silent on the question and the administrative agencies had conflicting views. The Department's failure to act more swiftly is a sign, not of its recalcitrance, but of the problem's complexity. As commentators have noted, pension administrators could reasonably have thought it unfair or even illegal to make male employees shoulder more than their 'actuarial share' of the pension burden." (Footnotes omitted).
 
 
 19
 This language was used in connection with the Supreme Court's decision rejecting the suggestion to make its opinion retroactive. The Court there commented "Courts have also shown sensitivity to the special dangers of retroactive Title VII awards in this field." Id. at 722, 98 S.Ct. at 1382. My dissent, although brief, challenges most, if not all, of the conclusions of the majority.
 
 ALLOWANCE OF ATTORNEY FEES
 
 20
 I am convinced that the equitable principles employed by the Supreme Court in refusing to make the decision in the parent case retroactive, should be fully utilized on the issue in connection with the allowance of attorney fees. Inasmuch as the Supreme Court has recognized that conscientious and intelligent administrators of pension funds (here public funds) who did not have the benefit of extensive briefs and arguments as presented to the courts might well have assumed that a program like the department employed was entirely lawful. Moreover, it recognized that the courts had been silent on the subject and that administrative agencies had conflicting views. The Court also observed that the department's failure to act more swiftly was a sign not of recalcitrance, but of the problem's complexity. In the light of these facts and the conclusions of the Supreme Court, there is no sound reason why the equitable principles mentioned in the Supreme Court decision should not likewise be used by us in declaring that an award of attorney fees under the facts and circumstances of this case was an abuse of discretion on the part of the district court. In these circumstances, public officials, such as those before us, the public agency which they represent, and the public in general should not be penalized for defending a claim which they clearly had a right to defend and might have been liable in damages if they did not raise and litigate the issue to its ultimate destination, The Supreme Court. We must remember that the "prevailing party" is entitled to attorney fees under § 706(k) of Title VII, not as a matter of right, but in the discretion of the court.
 
 
 21
 Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), is not contrary to my conclusions. The Albemarle Court was not faced with the same factual background as we have before us when it concluded that an award of back pay should not be conditioned on a showing of bad faith. Id. at 422-423, 95 S.Ct. at 2373-74. At the same time, that Court also held that back pay was not to be awarded automatically in every case. Consequently, the Albemarle presumption in favor of retroactive liability should not be applied to the allowance of attorney fees on a factual background, such as here, where the public agency and authorities are, in a sense, compelled to deny a claim. Here, we have the spectre of an enormous attorney fee being assessed against public authorities, even though those authorities were almost compelled to defend against the claim and in the language of the Supreme Court had not only the right, but also the public obligation, to challenge the claim.
 
 
 22
 Here, of course, the Supreme Court clearly recognized the right of defendants to defend. There would be no reason whatsoever to discourage the appellants in this case from violating the "Civil Rights Laws" in that no one knew the status of the law on this subject until the Supreme Court spoke in the main case.
 
 
 23
 The fact that a panel of this court previously awarded costs to the appellees is of no significance. The allowance of costs on appeal is governed entirely by the provisions of Rule 39, FRAP. Surely, the Congress didn't intend, by the enactment of § 706(k), to require a court to make an award of reasonable attorney fees under the provisions of Rule 39. Allowance of costs under Rule 39 is mandatory. Under § 706(k) it is discretionary.
 
 AMOUNT OF ATTORNEY FEES
 
 24
 Assuming arguendo that appellants are not entitled to equitable treatment and that attorney fees should be awarded retroactively, nonetheless, the amount of the fee awarded is grossly unjust.
 
 
 25
 Appellees' amended memorandum in support of their motion for attorney fees in the sum of $182,568.75 was presented on the following basis:
 
 
 26
 "Partners' Hourly Fees
(360 1/4 Hours at $100.00/hour) $36,025.00
Senior Associates' Fees
(613 hours at $80.00/hour) 49,040.00
Junior Associates' Fees
(265 3/4 hours at $55.00/hour) 14,616.00
Law Clerks ($25.00/hour) 4,644.00
 ------------
 SUBTOTAL $104,325.00
Multiplier 1.75
 ------------
 TOTAL $182,568.75"
 
 
 27
 Appellants moved for a hearing on the reasonableness of the attorney fees. The court proceeded to decide the case on the record before it, including some affidavits and denied the appellants' motion. In passing on the issue, the court observed:
 
 
 28
 "I have reviewed, of course, the exhibits. I have had them for some time. I have studied the briefs of the parties. And, considering what I regard to be the relevant factors, I am now prepared to state what I regard to be reasonable attorney's fees under Title VII.
 
 
 29
 In fixing those fees, I, of course, am taking into account the reasonable time spent by the attorneys, the complexity of the issues, the skill and experience of the attorneys, the results obtained, and the need to adequately compensate lawyers who take on Title VII cases. I have not sat down with a calculator and gone over each hour, and made a determination on an hour-by-hour or minute-by-minute basis applying to that time a reasonable hourly rate. I think that approach, which is mechanical, can lead, in some cases, to an unfair conclusion."
 
 
 30
 The affidavits regarding the time spent by and billing rates of the appellees' attorneys before the district court are at best very sketchy and I would say wholly inadequate for the purpose of fixing a reasonable attorney fee.
 
 
 31
 At the outset, I observe that nowhere did the district court make an analysis of the twelve guidelines in fixing a reasonable attorney fee as fixed by our court in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (CA9 1975), cert. denied sub nom. Perkins v. Screen Extras Guild, Inc., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In particular, the district court here failed to follow the most important guideline i. e., a separation of the time and labor required and the experience, reputation, and ability of the particular attorney involved. As mentioned in the Kerr opinion, the guidelines are consistent with those recommended by the Code of Professional Responsibility of the American Bar Association. In fact, the court could not have made findings on the time and labor required for the very valid reason that the record is so skimpy on those issues that proper findings cannot be made. Moreover, there is little, if anything, in the affidavits to show the amount of time spent or expended by the different partners, associates, and others involved in the prosecution of the case. The fact that the appellees may have mentioned hours and amounts in their motion does not provide proof of the amount of time, nor the value of the services, nor does the fact that the court recites that it reviewed the briefs of the parties supply proof of the factors mentioned in the briefs.
 
 
 32
 Here, I note that the case was first filed in 1973 and no doubt considerable of the work was performed long prior to the filing of the motion in September, 1978. Even if the court could consider the motion itself as evidence, there is nothing to show that the value of attorney fees at the time of the commencement of the action was the same as at the time of the filing of the motion.
 
 
 33
 The motion of the appellants for attorney fees shows that they took into consideration in figuring the total fee a factor designated as a "multiplier." There is nothing in the attorney fee statute which speaks of a multiplier. It speaks only of a reasonable fee. On this record, it would be a complete miscarriage of justice to award (1) what would appear to be a reasonable fee of $104,325.00, and (2) add to that fee of $104,325.00, a multiplier of some type which was used to bring the total to $182,568.75. Not only are the appellees seeking what might be termed as a reasonable fee, they are adding a multiplier to punish public officials and the public for defending an action which was rightfully defended.
 
 
 34
 In the light of the adjudicated good faith of the appellants in this cause, I would reward their good faith by allowing only a reasonable attorney fee. If an attorney fee is to be awarded, I would remand to the district court for a full fledged hearing on: (1) the twelve guidelines mentioned in Kerr ; (2) elimination of the multiplier factor in fixing a reasonable fee; (3) in no event, the fee to be in excess of $104,325.00.[1]
 
 
 35
 Appellees contend that this litigation should be treated like complex antitrust litigation and that a large multiplier should be tacked on to a reasonable fee. Their only citation is the Attorney Fees Award Act of 1976, 42 U.S.C. § 1988. Oddly enough, this Act does not even touch upon Title VII fee awards or a multiplier. Even though this case were to be treated like complicated antitrust litigation for fee purposes, a multiplier is still not warranted. Here, I emphasize that the case went to the Supreme Court on one difficult issue and one issue alone, interpretation of Title VII, 42 U.S.C. § 2000e-2(h), Act § 703(h). There were no depositions, no witnesses, no complicated fact situation, no parties, other than appellants and appellees, no interlocking directorates or interlocking corporations and no factual trial on the merits.
 
 
 36
 I challenge the majority's statement that the facts contained in the "affidavits and briefs submitted by the parties are sufficiently detailed to provide a basis for the award." Certainly, there is nothing in the briefs which the court should consider as proof, and without the statements in the briefs and in the respective motions, there is nothing in the record which would in any manner separate the "grain from the chaff." The court's observations at the close of trial, which the majority treats as findings, demonstrate the hodgepodge of a record which it had before it at the time of making the attorney fee award. The majority apologize for the lack of record by saying "Although we prefer a more detailed analysis than the brief statement made by the district court, it is not required." Cited in support of this statement is Buxton v. Patel, 595 F.2d 1182, 1185, n. 2 (CA9 1979). Oddly enough, the case cited in support of this statement denied attorney fees to the claimant. Beyond that, the case cited by the majority concluded with the language:
 
 
 37
 "Nor did the district judge indicate any evidence or contention that appellee defended this suit in bad faith. Given this background the district judge could properly conclude that the purposes of section 1988 would not be served by an award of fees." Id. at 1185. (Emphasis added).
 
 
 38
 In no way does Buxton support any one of the majority's conclusions.
 
 PIGGY BACK FEES
 
 39
 To pour salt on the open wound, the appellees requested and were allowed attorney fees for time spent in litigating the fees issue itself in the district court and for the appeals. Although some circuits in their enthusiasm to raid the treasuries of public institutions in Title VII attorney fee cases seem to have permitted such a recovery, the only Ninth Circuit case (42 U.S.C. § 1988) cited in support of appellees' contention is Williams v. Alioto, 625 F.2d 845 (CA9 1980), cert. denied, --- U.S. ----, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981). This case does not even discuss the particular subject. It simply allows an attorney fee on appeal. The case does, however, indicate that under circumstances such as ours, the court should have allowed a full evidentiary hearing on the merits. There the court held that the court did not abuse its discretion in relying on the submitted affidavits and oral argument in setting the fees in the light of the stipulation of the parties. Moreover, the court there held that the affidavits before it were sufficiently detailed to enable the court to consider all the facts necessary in setting the fees, citing Dennis v. Chang, 611 F.2d 1302, 1308-09 (CA9 1980). In Dennis, four affidavits were involved. Each affiant itemized the number of hours he or she expended on the case with a short description of each task performed and the time taken to perform it. The court commented on the experience of the counsel in civil rights litigation and that the rates of compensation sought were typical of those earned by experienced attorneys in the community. Here, even the majority concedes we have no such showing. In any event, Alioto in no way supports appellants' contention that it is entitled to an award of attorney fees on the type of a record here presented. The Ninth Circuit has not passed on this type of an issue and I would hold that on a record such as the one before us, an award of attorney fees enhancing the value of the reasonable fee mentioned in the statute should not be tolerated. Certainly, there is nothing in the Title VII Civil Rights Statute on attorney fees which allows fees in excess of those which are reasonable for the prosecution of the civil rights claim.
 
 CONCLUSION
 I would hold:
 
 40
 (1) that under the peculiar circumstance of this case, as evidenced by the language of the Supreme Court and by the record, attorney fees should not be retroactively awarded;
 
 
 41
 (2) that the record is wholly deficient on the requirements for the allowance of attorney fees and should be remanded for a full fledged hearing;
 
 
 42
 (3) that no attorney fees should be allowed on a "multiplier" or other contingency basis.
 
 
 
 [1]
 In Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court stated that an award of attorneys' fees would be " 'especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.' " Id. at 757, 100 S.Ct. at 1989 (quoting S.Rep. No. 94-1011, 94th Cong., 2d Sess., reprinted in (1976) U.S. Code Cong. & Ad. News 5912). Although Hanrahan was based on the attorneys' fees provision in 42 U.S.C. § 1988, the Court noted that it was patterned after § 706(k) of Title VII. 446 U.S. at 758 n. 4, 100 S.Ct. at 1989 n. 4. The same rule should therefore apply here
 
 
 [2]
 Counsel for the union requested the following fees:
 Partners' Hourly Fees
(360 1/4 Hours at $100.00/hour) $36,025.00
Senior Associates' Fees
(613 hours at $80.00/hour) $49,040.00
Junior Associates' Fees
(265 3/4 hours at $55.00/hour) $14,616.00
Law Clerks ($25.00/hour) $ 4,644.00
 -----------
SUBTOTAL $104,325.00
Multiplier 1.75
 -----------
TOTAL $182,568.75
 
 
 [215]
 hours at $80 per hour
(the attorney's time) $17,200.00
2 hours at $55 per hour
(associate's times) 110.00
 ----------
SUBTOTAL $17,310.00
Multiplier 1.75
 ----------
TOTAL $30,292.50
 Of this requested amount, the district court allowed $135,000.00.
 Counsel for the individual plaintiffs requested the following fees:
 Of this requested amount, the district court allowed $30,000.00.
 
 
 [3]
 The Supreme Court itself noted that this case was the first to challenge pension contribution differences based upon valid actuarial tables. The issues were especially complex, and the probability of success uncertain, because the courts had not addressed the question, and administrative agencies held conflicting views. The potential impact of this case is huge. More than 50 million persons in this country belong to pension plans affected by the decision. The prohibition against gender based pension contributions represents a radical departure from past practice. See Los Angeles Department of Water & Power v. Manhart, 435 U.S. at 720-22, 98 S.Ct. at 1381-82
 
 
 [1]
 The multiplier theory is fully discussed in the elaborate dissent of Judge Wilkey in Copeland v. Marshall, 641 F.2d 880 (CA DC 1980)