Paul R. NEWHOUSE, Jr., Suki R. Kuresa and Elwin L. Adarna, Plaintiffs-Appellees, Cross-Appellants,

v.

ROBERT'S ILIMA TOURS, INC., Defendant-Appellant, Cross-Appellees.

Nos. 81–4569, 81–4580.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 19, 1982.

Decided June 13, 1983.

Susan Ichinose, Robert Patrick Jaress, Mukai, Ichiki, Raffetto & MacMillan, Honolulu, Hawaii, for plaintiffs-appellees, cross-appellants.

Barry W. Marr, Torkildson, Katz, Jossem & Loden, Honolulu, Hawaii, for defendant-appellant, cross-appellees.

Before CANBY, NORRIS, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

This case is before us for a second time. The plaintiffs are former drivers for Robert's Ilima Tours, an Hawaiian corporation providing transportation services for tourists on the island of Oahu. Robert's practice was to compensate its drivers for actual driving time only, not for time spent on-call waiting for assignments. In August 1975, plaintiffs brought an action to recover overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206, 207, and 215 (1976), and under the Hawaii Wage and Hour Law, Hawaii Revised Statutes §§ 387–2 and 387–3 (1976).

After a bench trial, the court determined that the plaintiffs were entitled to overtime pay under the FLSA and to an award of $7,900.00 for attorney's fees. On the first appeal, defendant argued that the FLSA simply did not apply to the plaintiffs' claims. Plaintiffs rejoined that it was unnecessary for us to reach that question because, in their view, the district court rested its judgment alternatively on the Hawaii Wage and Hour Law. In an unpublished decision, we remanded for the district court to clarify the basis for its decision. 654 F.2d 731 (9th Cir.1981). We also asked the court to reconsider its attorney's fees award in light of *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

On remand, the district court stated that its decision to award plaintiffs overtime was based solely on the FLSA. The court then limited overtime compensation to the period before October 1, 1974. In so doing, the court reasoned that the Motor Carrier Act (MCA), 49 U.S.C. §§ 301–325 (1963), precluded application of the FLSA overtime protections to Robert's employees after the time the Secretary of Transportation revoked the certificate exempting Hawaiian motor carriers from regulation under the MCA. In addition, the court increased the attorney's fees award to $25,000 to reflect appellate and post-remand services, and found that costs and interest on the back pay award from the date of the complaint should be added.[1]

Both parties have appealed. Robert's appeals the district court's finding that the overtime provisions in the FLSA covered its employees before October 1974. Robert's also challenges the costs and interest awards, and the amount of the attorney's fees award. Plaintiffs appeal from the court's conclusion that FLSA coverage ceased on October 1, 1974.

### I. *Interaction of the Motor Carrier Act and the Fair Labor Standards Act*

We are required to examine the interrelationship of two federal statutes. The

1. The decision of the district court is reported at 523 F.Supp. 320 (D.Haw.1981).

FLSA provides that employees in interstate commerce shall be paid at one and one-half times their regular hourly rate for hours over forty in any work week. 29 U.S.C. § 207(a)(1). The MCA authorizes the Secretary of Transportation, in the interest of safety, to establish "qualifications and maximum hours of service for employees" of motor carriers like Robert's. 49 U.S.C. § 304(a)(1). Thus, the FLSA provides for overtime pay for employees generally, while the MCA authorizes the Secretary to establish maximum hours for certain employees in a particular industry. However, the FLSA excepts from its overtime provisions "any employee with respect to whom the Secretary of Transportation [formerly the Interstate Commerce Commission] has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." 29 U.S.C. § 213(b)(1).

■ Where the MCA applies, the FLSA does not. *Levinson v. Spector Motor Service,* 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947); *Marshall v. Union Pacific Motor Freight Co.,* 650 F.2d 1085, 1089 (9th Cir.1981). Thus, as a general rule, employees of motor carriers are subject to the MCA and not the FLSA. This simple rule of MCA supremacy was complicated by an MCA provision that gave the Interstate Commerce Commission (ICC) the authority to exempt qualified intrastate motor carriers from MCA regulation. 49 U.S.C. § 304(a)(4a).[2] In 1960, the Commission exempted motor carriers in the state of Hawaii. 84 M.C.C. 5 (1960); 49 C.F.R. § 1050 (1967).[3] That exemption was in effect during much of the time for which the plaintiffs seek compensation. The principal question before us then is whether FLSA overtime protections applied during the period the motor carriers were exempt from the MCA.

■ No reported case has dealt squarely with this issue. There is direct authority, however, for the view that during the period when an MCA exemption is in effect a motor carrier is not subject to the Act. In *IML Sea Transit, Ltd. v. United States,* 343 F.Supp. 32 (N.D.Cal.) (three judge panel), *aff'd sub nom. Interstate Commerce Commission v. IML Sea Transit, Ltd.,* 409 U.S. 1002, 93 S.Ct. 433, 34 L.Ed.2d 295 (1972), the issue was whether Sea Transit was a freight forwarder within the Interstate Commerce Act and therefore required to obtain an ICC license. To be subject to ICC regulation, a freight forwarder, *inter alia,* must use the services of a carrier subject to the MCA. Sea Transit employed Hawaiian motor carriers to deliver shipments in Hawaii. These carriers were included within

---

2. 49 U.S.C. § 304 provided in pertinent part:
   (a) It shall be the duty of the Commission—
   . . . .
   (4a) To determine, upon its own motion, or upon application by a motor carrier, a State board, or any other party in interest, whether the transportation in interstate or foreign commerce performed by any motor carrier or class of motor carriers lawfully engaged in operation solely within a single State is in fact of such nature, character, or quantity as not substantially to affect or impair uniform regulation by the Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy declared in this Act. Upon so finding, the Commission shall issue a certificate of exemption to such motor carrier or class of motor carriers which, during the period such certificate shall remain effective and unrevoked, shall exempt such carrier or class of motor carriers from compliance with the provisions of this chapter,

   and shall attach to such certificate such reasonable terms and conditions as the public interest may require. At any time after the issuance of any such certificate of exemption, the Commission may by order revoke all or any part thereof.

   The subsequent history of the exemption authority is discussed *infra; see especially* notes 6 and 7.

3. 49 C.F.R. § 1050 provides:
   It is hereby certified that transportation (except transportation of household goods as defined by the Commission) in interstate or foreign commerce performed by all qualified motor carriers lawfully engaged in operation solely within the State of Hawaii is in fact of such nature, character or quantity as not substantially to affect or impair uniform regulation by the Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy.

the same certificate of exemption that covered Robert's. During the investigation, the ICC examiner took the position that since the ICC had granted the exemption and retained the continuing power to revoke it in whole or in part, the carriers were still subject to the MCA. The court rejected this analysis, holding that while the exemption was in effect, the carriers were not subject to the MCA. The court said,

> The intervenors . . . contended that only Congress can exclude them from the purview of the Act itself. The court rejects this argument. Under [the Motor Carriers Act,] 49 U.S.C. § 304(a)(4a), the ICC has the power either to "attach to such certificate [of exemption] such reasonable terms and conditions as the public interest may require" or to "revoke all or any part thereof." The ICC has chosen to do neither. Until such time as the ICC actually exercises its power to condition or revoke the certificates of exemption it has granted to the Hawaiian motor carriers, they are not subject to the [MCA]."

343 F.Supp. at 38.

The Commission followed the holding of *IML Sea Transit* in *IML Freight, Inc.—Control & Merger—Freightmaster Corp.,* 122 M.C.C. 458 (1976). There, the ICC dismissed for lack of jurisdiction a joint application filed by IML Freight, an interstate motor carrier, and Freightmaster, an exempted Hawaiian motor carrier, for the former to acquire control of the latter. As the concurring opinion pointed out

> [s]ince [the provisions of the Interstate Commerce Act regulating motor carrier mergers apply] only to transactions between carriers subject to parts I, II, and III of the Act [including the MCA], and Freightmaster Corporation, an exempt Hawaiian carrier, is not subject to any part of the Act, [citing *IML Sea Transit*], it can only be concluded that the pro-

posed transaction . . . does not constitute a transaction within the scope of [the Act], and that application should be dismissed.

122 M.C.C. at 473 (Taylor, C., concurring). These cases directly support the view that the Commission's exemption of a motor carrier from MCA coverage suspends the applicability of the MCA completely.

In an early FLSA case, the Supreme Court strongly implied that employees exempted from coverage under the MCA are indeed subject to the provisions of the FLSA. In *Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), the Court held that a class of employees was subject to the MCA rather than the FLSA even though the Commission had not yet adopted regulations covering those employees. The Court said that it is the existence of the Commission's power to regulate that is determinative of the question whether FLSA overtime protections apply. *Id.* at 434, 68 S.Ct. at 137. However, the Court reached this conclusion only after first finding that "[t]he Commission [had] made no exception . . . that would exempt drivers of the petitioner from [the requirements of the MCA] as a class." *Id.*

The language of the exemption provision was mandatory: if the Commission found that a carrier's activities did not substantially affect interstate commerce, it was required to grant an exemption. *See* 49 U.S.C. § 304(a)(4a). Even where no party has suggested that an exemption was necessary, the Commission had a statutory duty to issue exemptions *sua sponte. Id.* Thus, whenever the prerequisites of subsection 304(a)(4a) were met, an exemption was mandated; and so long as there was no change in circumstances, the Commission had no power to regulate under the MCA. Where no such power existed, there was no bar to application of the FLSA.[4]

---

4. While the Commission did find that Hawaiian motor carriers had no effect on interstate commerce significant enough to justify applying the MCA, it did not say there was no interstate effect at all. *See, e.g.,* 84 M.C.C. at 31 (Hawaiian operations were "essentially local"). Had it

done so, there would be no basis even for applying the FLSA. The district court recognized this, and made a finding in the record that Robert's activities affected interstate commerce to the extent required by the FLSA. The court noted that "[t]he statutory connection to

We are persuaded that a certificate of exemption, until revoked or conditioned, completely removed exempted carriers from the jurisdiction of the Motor Carrier Act. Once the Hawaiian carriers were exempted from MCA regulations they became subject once again to the Fair Labor Standards Act. Accordingly, we affirm the holding of the district court: during the period when Robert's enjoyed a certificate of exemption from the MCA, its employees were entitled to overtime compensation pursuant to the provisions of 29 U.S.C. § 207.[5]

Plaintiffs filed a cross-appeal contending that the district court erred in limiting their recovery to the period before October 1, 1974, the date on which the Secretary of Transportation revoked the Hawaii certificate of exemption (to the extent that it pertained to maximum hours of service and driver qualifications). While the duty to regulate hours and qualifications was transferred to the Department in 1966, 49 U.S.C. § 1655(e)(6)(C), there was no specific transfer of the duty to issue or revoke exemptions from such regulations.[6] Plaintiffs argue therefore that the Secretary had no power to revoke the Hawaii

certificate. In support of their argument, they contend that Congress intended all but specified powers to remain under the aegis of the Commission. 49 U.S.C. § 1655(f)(1).

Preliminarily, we note that Congress provided that certificates of exemption in effect at the time the Department of Transportation Act was passed would remain in effect until revoked. See Pub.L. No. 89–670, § 12(a), 80 Stat. 931, 949 (1966). The question then is whether Congress intended to leave the power to revoke outstanding exemptions affecting maximum hours and qualifications with the Commission—despite the fact that it no longer had the authority to regulate maximum hours or qualifications—or whether it intended the power to reside in the Secretary, who did have that authority. We think the answer is evident. We hold that under section 12(a) the Secretary had the power to revoke the Hawaii exemption insofar as it pertained to maximum hours and qualifications.[7]

## II. Attorney's Fees Award

Robert's appeals from the district court's decision on remand to increase the award

---

interstate commerce for purposes of the MCA is more narrowly defined than for purposes of the FLSA, so that, if there is sufficient connection for the former, there is clearly sufficient connection for the latter, while the reverse may not be true." 523 F.Supp. at 322. See Marshall v. Victoria Transp. Co., 603 F.2d 1122 (5th Cir.1979).

5. Still other complications are alleged to have been created by the transfer of the Commission's relevant authority to the Department of Transportation. See 49 U.S.C. § 1655(e)(6)(C). Robert's contends that the certificate of exemption for Hawaiian motor carriers failed to survive that transfer. In response, we need only note that in creating the new department, Congress preserved existing certificates. The original certificate of exemption was issued in 1960 in accordance with all then applicable procedural requirements, see 84 M.C.C. 5 (1960), and continued in force after the establishment of the Department of Transportation. See note 7, infra.

6. In 1978, Congress completely recodified the Interstate Commerce Act, including what remained of section 304. As part of that undertaking, it revised the exemption provision to require the Commission to issue certificates only with respect to the areas in which it still

had authority to regulate. 49 U.S.C. § 10525 (Supp. IV 1980). See Pub.L. No. 95–473, 92 Stat. 1337, 1363 (1978). This reflected the redistribution of powers among the Commission and the Secretary accomplished by the Department of Transportation Act. 49 U.S.C. § 1655(e).

7. The Secretary was given the power to regulate all motor carriers in interstate commerce with respect to maximum hours and qualifications of drivers. 49 U.S.C. § 1655(e)(6)(C). The power to revoke exemptions is inherent in that broad congressional mandate. Furthermore, Congress provided for the continuation of existing certificates issued under provisions such as section 304(a) until revoked by the Secretary. Pub.L. No. 89–670, § 12(a), 80 Stat. 931, 949. Thus, we think the Secretary acted within his authority when, in the exercise of the power vested in him by the Act, he revoked the Hawaii exemption.

The parties do not discuss the question whether the Secretary also has the power to grant exemptions affecting hours and qualifications and we need not consider that question here. Clearly, however, the Commission does not. See note 6, supra.

for attorney's fees to $25,000, contending (1) that the district court lacked jurisdiction under this court's remand order to add fees for appellate and post-remand services and (2) that the district court abused its discretion by failing to apply all the *Kerr* factors when it computed the award. We affirm the award of attorney's fees.

■ The FLSA grants prevailing plaintiffs a reasonable attorney's fee. 29 U.S.C. § 216(b). Such awards may include fees for appellate and post-remand services. *See generally Perkins v. Standard Oil Co.,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970); *Suzuki v. Yuen,* 678 F.2d 761, 762 (9th Cir.1982) and cases cited. To receive fees for appellate and post-remand services under the FLSA, it is not necessary that a reviewing court's remand order explicitly direct the district court to award fees for the appeal. *See Perkins v. Standard Oil Co.,* 399 U.S. at 223, 90 S.Ct. at 1990; *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839 (9th Cir.1982). The district court had jurisdiction to grant attorney's fees for appellate and post-remand services.

Robert's also argues that the district court's failure to discuss each of the twelve factors enumerated in *Kerr v. Screen Extras Guild,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) was an abuse of discretion. We held in *Rivera v. City of Riverside,* 679 F.2d 795 (9th Cir.1982) that the district court "need not discuss specifically each of the twelve factors. It is sufficient if the record shows that the court considered the factors called into question by the case at hand and necessary to support the reasonableness of the fee award." *Id.* at 796–97 (quoting *Kessler v. Associates Financial Services Co. of Hawaii, Inc.,* 639 F.2d 498 (9th Cir.1981)). Even if the court "views one [*Kerr*] guideline as controlling, its decision will not amount to an abuse of discretion so long as it is clear all guidelines were considered." *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 781 (9th Cir.1982). *Kerr* does not mandate detailed findings, precise calculations on the record, or an evidentiary hearing. *Manhart v. City of Los Angeles, Dept. of Water and Power,* 652 F.2d 904 (9th Cir.1981). In *Manhart,* the trial court had relied on five factors approved by *Kerr.* The court of appeals stated that "[a] statement by the court that it has considered a *Kerr* factor suffices; the court is not required to detail the mechanics of its application." *Id.* at 908. *See also Dennis v. Chang,* 611 F.2d 1302 (9th Cir. 1980) (district court's award of fees was upheld where the award was explicitly based on three findings and where the court said it had considered all factors relevant under standard authorities, including *Kerr*).

■ In this case, the district court made specific findings that the attorney's time was reasonably expended, that the issues were novel and unusually complex, and that the results obtained were favorable to the plaintiffs. 523 F.Supp. at 325–26. The court stated that the hourly rate of $75 requested for part of the attorney's time was reasonable for relatively experienced attorneys in that district, and then reduced counsel's total request by approximately one-third. *Id.* The court further stated that it had balanced all of the *Kerr* factors in reaching its decision. *Id.* at 326. The record shows that Robert's itself provided the court with information relevant to all the *Kerr* factors. Under these circumstances, we cannot say that the district court abused its discretion.

III.   *Costs and Interest Awards*

In its Decision and Order after Remand, the district court awarded plaintiffs costs of $1,506.48 plus interest on plaintiffs' back pay award from the date of the complaint. However, both the costs and the interest awards were omitted from the judgment without an explanation.

■ Robert's appeals from the pre-judgment interest award on the ground that the district court's *sua sponte* imposition of prejudgment interest was beyond the scope of our remand order. We agree

that the district court erred because it lacked power on remand to enlarge a judgment in this fashion where the mandate made no such provision. *Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948). An error of this nature could be corrected by amending our mandate and granting leave to the district court to amend its judgment. Fed.R.Civ.P. 60(a). However, while we may amend our mandates to protect the integrity of our own process, *Perkins v. Standard Oil Co.,* 487 F.2d 672, 674 (9th Cir.1973), or to prevent injustice, *National Surety Corp. v. Charles Carter & Company,* 621 F.2d 739, 741 (5th Cir.1980), we see no reason to do so in this case. We therefore reverse the award of prejudgment interest.

Robert's also objects to the district court's finding that plaintiffs are entitled to costs for appellate and post-remand expenses. Our remand order made no mention of such costs. *See* Fed.R.App.P. 39(a). In addition, the district court's judgment did not include the costs found allowable, and the record does not show that any were taxed. Although the procedural deficiencies could be corrected, plaintiffs have expressly stated on this appeal that they do not seek reimbursement of these costs. Therefore, we see no need to consider Robert's argument.

The judgment of the district court with respect to back pay and attorney's fees is AFFIRMED. The judgment of the district court with regard to prejudgment interest is REVERSED. Costs on this appeal are awarded to plaintiffs.