**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VERNON HARRIS,
                    *Plaintiff-Appellant,*

v.

MARICOPA COUNTY SUPERIOR
COURT; ARIZONA SUPREME COURT;
STATE OF ARIZONA,
                    *Defendants-Appellees.*

No. 09-15833

D.C. No.
2:02-cv-00494-
SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted
March 10, 2010—San Francisco, California

Filed January 20, 2011

Before: Procter Hug, Jr., Stephen Reinhardt and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Reinhardt;
Partial Concurrence and Partial Dissent by Judge Bybee

## COUNSEL

Cheri L. McCracken, Phoenix, Arizona, for the plaintiff-appellant.

Katherine Baker and Diane Bornscheuer, Scottsdale, Arizona, for the defendants-appellees.

---

## OPINION

REINHARDT, Circuit Judge:

After he was forced out of his position as an Initial Appearance Hearing Officer for the Maricopa County Superior Court, Vernon Harris unsuccessfully sued the Superior Court and the other defendants for violations of, *inter alia*, his rights under Title VII of the Civil Rights Act and the Fourteenth Amendment. Defendants then sought substantial attorneys fees and costs from Harris, and were awarded over $125,000 in fees and costs by the district court. Harris challenges those awards. Our laws encourage individuals to seek relief for violations of their civil rights, and allow a defendant to recover fees and costs from a plaintiff in a civil rights case only "in exceptional circumstances" in which the plaintiff's claims are "frivolous, unreasonable or without foundation." *See Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (internal quotation marks, citation omitted); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). Moreover, only fees "attributable exclusively to plaintiff's frivolous claims," are recoverable by a defendant. *See Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064 (9th Cir. 2006) (internal quotation marks, alterations and citation omitted). Because the district court both used an impermissible method of determining the amount of fees and costs to be assessed for the claims for which fees were appropriate, and erred in some of its determinations as to which claims were properly subject to a fee award to defendants, we vacate the award of attorneys fees and remand for a new award that complies with this opinion.

I

In February of 2000, Vernon Harris was appointed as an Initial Appearance Hearing Officer for the Maricopa County

Superior Court. No employment contract was executed between Harris and the Superior Court, and by statute such Hearing Officers, also known as Commissioners, serve at the pleasure of the chief presiding judge of the court. *See* Ariz. Rev. Stat. § 12-213. In late 2000 or early 2001, allegations were made that Harris had engaged in inappropriate conduct towards female staff members, had asked his secretary to perform personal errands for him, and had performed his own duties inadequately. In January and February of 2001, Harris was placed on administrative leave, investigated, and, finally, given the option of resigning or being terminated. He chose to resign.

Harris, who is African American, then filed a charge with the Equal Employment Opportunity Commission in which he alleged that he had been discriminated against on account of his sex and his race, which the EEOC dismissed. In February of 2002, Harris filed a complaint in Maricopa County Superior Court, naming as defendants the State of Arizona, Maricopa County Superior Court, Maricopa County, and the Arizona Supreme Court. Defendants removed the case to federal court, at which point Harris filed an Amended Complaint in which he made the following ten claims against the defendants: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) hostile and discriminatory work environment; (4) race discrimination; (5) false light/invasion of privacy; (6) wrongful termination in violation of public policy; (7) intentional or negligent infliction of emotional distress; (8) defamation; (9) violation of due process and equal protection under the law; and (10) intentional interference with a business relationship.

The parties then engaged in several years of discovery and legal maneuvering. Of note, in January 2003, Maricopa County was dismissed from the lawsuit on Harris's motion, and in October 2005, defendants' motion for judgment on the pleadings was granted with respect to Harris's wrongful termination claim. In July 2006, after both Harris and the defen-

dants filed summary judgment motions, the district court granted defendants summary judgment on the remaining claims in a sealed order. Harris appealed to this court and we affirmed in a memorandum disposition. *Harris v. Super. Ct. of Ariz.*, 278 Fed. Appx. 719, 720-22 (9th Cir. 2008). We denied defendants' motion for attorneys fees incurred in connection with the appeal without comment or explanation.

Prior to our disposition of the appeal, defendants moved for attorneys fees in district court. The district court denied the motion without prejudice. After we denied Harris's petition for rehearing of his appeal, defendants again moved in district court for attorneys fees, seeking $315,974.65 in fees under Arizona Revised Statutes §§ 12-341.01(A) and 41-1481(J) and 42 U.S.C. §§ 1988 and 2000e-5(k), non-taxable expenses of $53,533.66, and reasonable fees and costs for preparation of the fee petition.

In 2009, the district court granted in part and denied in part the fee motion, awarding defendants $85,514.84 in fees and $40,150.23 in non-taxable costs. It separated defendants' claims into those it designated contracts-based, for which fees are available to prevailing defendants under Arizona Revised Statute § 12-341.01(A) so long as certain conditions apply; those it designated as federal civil rights claims, for which fees are available to prevailing defendants in very limited circumstances under 42 U.S.C. §§ 1988 and 2000e-5(k); and those it designated as state law claims sharing a common nucleus of operative facts with the federal civil rights claims. It determined that most of Harris's basic civil rights claims, including his claims of disparate treatment, retaliation, and equal protection, were not frivolous, and thus that no attorneys fees were permissible for those claims. Similarly, it determined that his defamation and tortious interference claims were not frivolous, and awarded no fees on those claims. For Harris's other claims it found fees to be appropriate.

Although the defendants were able to specifically attribute work amounting to only about $10,000 of attorneys fees to the claims for which the district court determined fees to be warranted, the district court calculated the amount attributable to these claims to be $171,104.84 by taking the $251,464.10 in "general fees" — fees that the defendants requested but that they were not able to allocate to any particular claim — and dividing them equally across the ten claims in Harris's Amended Complaint, and then allocating to each claim for which it determined fees to be appropriate one-tenth of the total general fees. After calculating the amount of fees in this manner, the district court reduced the award by approximately half, to $85,514.84, in light of Harris's financial hardship. With respect to expenses, the district court awarded a pro-rated amount of defendants' requested expenses based on the ratio of contract-based claims (for which expenses are not available) to non-contract-based claims (for which, in the district court's view, expenses were available). There was no reduction to the amount of expenses for financial hardship, however. Harris timely appealed.

## II

The principal issues in this case are legal in nature and therefore reviewed de novo. *See Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1059-60 (9th Cir. 2006)*; see also Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13 (App. 2000). Harris's primary challenge is to the methodology that the district court used to determine the amount of fees attributable to those claims for which fees were appropriate. The remaining challenges involve which claims may appropriately be the subject of fee awards.

Defendants requested attorneys fees of $315,974.65. Some of this amount was allocated to specific claims, but it was not possible for the defendants to so allocate the vast majority of the fees. Accordingly, $251,464.10 of the fee amount requested by defendants was not associated with any specific

claim, but instead was assigned to a category of "general fees." The district court divided these general fees equally across the ten claims in Harris's Amended Complaint, and then for each claim for which it determined that fees were appropriate, added the one-tenth of the general fees apportioned to that claim to the much smaller amount of fees the defendants asserted were specifically attributable to the defense of that claim. For instance, for the wrongful termination claim, which the district court determined was frivolous simply by examining the Amended Complaint, and on which the district court granted defendants judgment on the pleadings in March of 2005, 15 months before it reached its decision as to the other claims, the district court calculated the amount of fees to be $25,207.36: $25,146.41 from general fees and $60.95 from work that defendants asserted was specifically attributable to defending against that claim.

[1] In a civil rights case, such as this one, the pro-rata allocation of general fees between claims for which a fee award is appropriate and claims for which such an award is not appropriate, based solely on the number of claims, is impermissible, for reasons that go to the heart of our civil rights policy. Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the "highest priority," requires that private individuals bring their civil rights grievances to court. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968). Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes. Guaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as the means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior. Our system of awarding attorneys fees in civil rights cases is in large part dedicated "to encouraging

individuals injured by . . . discrimination to seek judicial relief." *See id.*

**[2]** In accordance with this objective, courts are permitted to award attorneys fees to prevailing *plaintiffs* as a matter of course, but are permitted to award attorneys fees to prevailing *defendants* under 42 U.S.C. §§ 1988 and 2000e-5(k), as well as A.R.S. § 41-1481(J), only "in exceptional circumstances," *Barry*, 902 F.2d at 773 (9th Cir. 1990): prevailing defendants may recover fees only for claims that are "frivolous, unreasonable, or groundless." *Christiansburg Garment Co.*, 434 U.S. at 422. To put a finer point on it, *a defendant is entitled only to "the amount of attorneys fees attributable exclusively to" a plaintiff's frivolous claims. See Tutor-Saliba Corp.*, 452 F.3d at 1064 (quoting *Quintana v. Jenne*, 414 F.3d 1306, 1312 (11th Cir. 2005)); *see also Fox v. Vice*, 594 F.3d 423, 429 (5th Cir. 2010) ("a defendant is only entitled to attorneys' fees for work which can be distinctly traced to a plaintiff's frivolous claims"). This policy was adopted expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus "undercut[ting] the efforts of Congress to promote the vigorous enforcement of" the civil rights laws. *Christiansburg Garment Co.*, 434 U.S. at 422.

**[3]** A civil rights case such as the instant one that contains both non-frivolous and frivolous claims presents the problem of allocating fees, among those claims. The proper allocation of attorneys fees among such claims, when a defendant seeks to recover fees, is both simple and obvious, at least in theory. Fees may be awarded only for frivolous claims, and a defendant bears the burden of establishing that the fees for which it is asking are in fact incurred solely by virtue of the need to defend against those frivolous claims. That is because here as in cases involving attorneys fees generally, "[t]he burden of establishing entitlement to an attorneys fees award lies solely with the claimant."[1] *Trustees of Directors Guild of America-*

---

[1]There is no reason to make an exception for defendants in civil rights cases. Prevailing defendants seeking recovery of attorneys fees in civil

*Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Accordingly, a defendant must demonstrate that the work for which it asserts that it is entitled to fees would not have been performed but for the inclusion of the frivolous claims in the complaint. To do otherwise — as when a court simply divides a defendant's total attorneys fees equally across plaintiff's frivolous and nonfrivolous claims and attributes to the frivolous civil rights claims a pro-rata share of those total fees (with no demonstration that such fees were in fact incurred solely in order to defend against the frivolous claims) — would be to risk requiring a plaintiff to pay defendants' attorneys fees incurred in defeating his nonfrivolous civil rights claims, an outcome barred by our precedent and that of the Supreme Court. Unless a prevailing defendant can establish that its attorneys would not have performed the work involved except for the need to defend against the frivolous claims (and thus would not have done the work in whole or in part in order to defend against the nonfrivolous claims), it is not entitled to the fees in question. Where, as here, the plaintiff seeks relief for violation of his civil rights under various legal theories based on essentially the same acts, and a number of his claims are not frivolous, the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry. That burden is not carried when the method of allocation is that which was used either by defense counsel or the court.

**[4]** Although some portion of the fees awarded to defendants by the district court — those associated with the claims

---

rights cases do not, like prevailing plaintiffs, vindicate important federal policy or receive fees from a transgressor of federal law. *Christiansburg*, 434 U.S. at 418. Whether the general rule, imposing the burden on the proponent of a fee petition, applies to civil rights plaintiffs, however, is a question that we need not resolve in this case.

that the district court deemed contracts-based claims — were awarded under Arizona Revised Statute § 12-341.01(A) rather than under the civil rights fee statutes discussed above, the same rule applies to those claims. First, § 12-341.01 itself makes clear that a fee award may not exceed the amount necessary to defend against those claims for which such fees are appropriate. *See* Ariz. Rev. Stat. § 12-341.01(B). Second, and more important, even the claims designated as "contracts-based" by the district court allege violations of Harris's civil rights — Harris alleged that defendants breached their contract with him by discriminating against him — and Arizona state policy with regard to attorneys fees for defendants in civil rights cases is intended to be "equally protective" of plaintiffs as is federal policy. *See Sees v. KTUC, Inc.*, 148 Ariz. 366, 369 (Ariz. App. 1985). Thus, under Arizona law it is impermissible to require a plaintiff to pay fees that a prevailing defendant incurred in whole or in part defending against nonfrivolous civil rights claims. *Id.* It would make little sense to allow a prevailing defendant to recover all or a portion of such fees simply because a plaintiff included a contracts-based claim in his complaint in addition to his nonfrivolous civil rights claims. Accordingly, the only fees that may be attributed to Harris's contracts claims for purposes of § 12.341.01(A) are those that the defendants are able to demonstrate would not have been incurred but for the inclusion of those claims in the complaint. Thus it was error for the district court to attribute to each of the contracts claims a tenth of the "general" fees, with no demonstration that the work involved was actually performed solely in order to defeat those claims.

In determining its fee award, the district court relied on *Cairns v. Franklin Mint*, 292 F.3d 1139, 1157 (9th Cir. 2002), in which this court allowed an apportionment of general fees among claims. *Cairns*, however, was not a civil rights case, and thus did not implicate our longstanding policy of solicitude for civil rights plaintiffs, and our insistence that they be required to reimburse defendants only for fees incurred in defense against "exceptional[ly]" unwarranted claims. *See*

*Barry*, 902 F.2d at 773. Additionally, the general fees in this case were more than ninety percent of the total attorneys fees the court found reimbursable, a factor apparently not present in *Cairns*. Our other case cited by defendants in support of the district court's methodology also did not concern fees to defendants in a civil rights case. *See, e.g.*, *Hudson v. Moore Bus. Forms, Inc.*, 898 F.2d 684 (9th Cir. 1990) (concerning sanctions under Rule 11).

**[5]** The district court made an identical error with respect to awarding fees for work that the defendants asserted was specifically attributable to individual claims for which fees were permissible. In addition to impermissibly dividing the "general" fees across all claims, defendants in many instances divided fees for specific work entries among different claims. For example, the $60.95 in fees that were purportedly attributable specifically to the defense against the wrongful termination claim was a result of two different time entries for legal research. One of those time entries was divided across four claims (with one quarter of the fee associated with that time entry allocated to each claim), including claims that the district court found were nonfrivolous. In other words, the fee purportedly attributable specifically to plaintiff's frivolous wrongful termination consisted in part of work that was also done for the purpose of defending against nonfrivolous claims. Defendants had similar entries for the specific fees for other claims, and, for at least one claim, hostile work environment, defendants did not list any work that was not performed for both frivolous and nonfrivolous claims. Such division of fees for specific time entries is impermissible for exactly the same reasons that a division of general fees across frivolous and nonfrivolous claims is impermissible. To reiterate, the only fees that may be awarded are those incurred for work performed exclusively in order to provide a defense against claims for which fees are permissible. If defendants do not demonstrate that the work would not have been performed in order to defend against the nonfrivolous civil rights, or to put it differently, but for the need to defend against the frivolous

claims, fees associated with that work cannot be awarded, even in part.[2]

### III

We next examine the district court's decisions to award attorneys fees with respect to each of the claims for which it determined that fees were appropriate.

### A. Contracts Claims

Arizona Revised Statute § 12-341.01 provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees" in order "to mitigate the burden of the expense

---

[2]In *Tutor-Saliba Corp. v. City of Hailey*, we determined that where a plaintiff in a § 1983 action alleges multiple interrelated claims based on the same underlying facts, and some of those claims are frivolous and some are not, a court may award defendants attorneys fees with respect to the frivolous claims only when those claims are not "intertwined." *See* 452 F.3d at 1063-64. We determined that the claims in that case were not "intertwined" because they were "distinct" in that "the merits of each claim could easily be evaluated separately," in significant part because the facts were both simple and undisputed; and the claims were argued separately throughout the case. *Id.* at 1064. The circumstances in this case are quite different. The facts are neither undisputed nor simple, and the research required to evaluate and develop arguments with respect to many of Harris's purportedly frivolous claims was substantially the same as that necessary to the defense against his nonfrivolous discrimination claims, including disparate treatment, retaliation, and equal protection. Nevertheless, because Harris does not assert that his frivolous and nonfrivolous claims were so intertwined as to make a fee award with respect to the frivolous claims inappropriate, we do not reach that issue here and express no view as to which if any of Harris's frivolous claims might be exempted from reimbursement of defendants' fees under *Tutor-Saliba*. In cases in which particular frivolous claims are determined to be intertwined with nonfrivolous claims, the *Tutor-Saliba* approach may make it unnecessary to examine the particular work performed to the extent required under the rules set forth above, if at all. In contrast, where the *Tutor-Saliba* approach is not applicable, it will be necessary to apply the principles enumerated herein.

of litigation to establish a just claim or a just defense." Ariz. Rev. Stat. § 12-341.01(A), (B). It is not, however, a fee shifting statute; as the Arizona Supreme Court has stated, "[m]ere eligibility [under § 12-341.01(A)] does not establish entitlement to fees." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1049 (Ariz. 1985) (en banc). Instead, a court deciding whether to award fees under the statute must consider the multifactor standard outlined in *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567 (Ariz. 1985).[3]

Harris's chief claim with regard to the fees for the claims for which the district court awarded fees under § 12.341.01(A) is that the claims did not "aris[e] out of a contract." The proper inquiry for determining whether a claim "arise[s] out of a contract" is whether the "claim could not exist 'but for' the breach or avoidance of contract." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15 (Ariz.App. Div. 1, 2000); *see also A.H. By and Through White v. Arizona Property and Cas. Ins. Guar. Fund*, 190 Ariz. 526, 529 (1997) (en banc). It is well established, moreover, that a defendant is entitled to attorney's fees if the plaintiff's claims arise out of an alleged contract that is proven not to exist. *See Chevron U.S.A. Inc. v. Schirmer*, 11 F.3d 1473, 1480 (9th Cir. 1993).

**[6]** Here, Harris's claims for breach of contract and the

---

[3]The *Associated Indemnity* factors are: "(1) whether the unsuccessful party's claim or defense was meritorious; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." *Wagenseller*, 710 P.2d at 1049.

duty of good faith and fair dealing were explicitly premised on the existence of an implicit contract that the district court found did not exist, and thus were eligible for a fee award under A.R.S. § 12-341.01. Additionally, while different courts might reasonably reach different determinations as to whether a fee award was appropriate under the *Associated Indemnity* factors, we see no abuse of discretion in the district court's decision to award fees for these two claims. As we explained above, however, because this is a civil rights case, in awarding such fees, the district court must under Arizona law include only fees for legal work that was not performed in whole or in part in order to defend against the nonfrivolous civil rights claims. *See Sees*, 148 Ariz. at 369. Thus, the award of fees in connection with this claim must be vacated as well.

**[7]** Fees were not appropriate at all under § 12-341.01(A) for Harris's due process claim. "To state a cognizable due process claim" Harris was required to show "a recognized liberty or property interest at stake." *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009) (internal quotation marks and citation omitted). Harris alleged that defendants deprived him of a property interest in continued employment, a claim apparently based on contract, but also alleged a liberty interest in being free from defamation. *See id.* at 955 ("A person's liberty interest is implicated if the government levels a charge against him that impairs his reputation for honesty or morality" (internal quotation marks and citations omitted))[; *see also* Amended Complaint at 14; Response and Objection to Motion for Attorney's Fees at 15]. While the asserted property interest relied on the alleged contract, the liberty interest did not. Accordingly, Harris's due process claim was not dependent on the existence of a contract: it could have advanced merely on the asserted liberty interest. Thus, fees were not available under § 12-341.01 for the due process claim.[4]

---

[4]Defendants contend that Harris waived this argument by failing to raise it below. Harris did suggest in district court that the only claims for which

B.    State and federal civil rights statutes

**[8]** In addition to the fees sought under § 12-341.01, defendants also sought fees under three civil rights statutes— Arizona Revised Statute § 41-1481(J) and 42 U.S.C. §§ 1988 and 2000e-5(k). Under Arizona Revised Statute § 41-1481(J), "the court may allow the prevailing party . . . a reasonable attorney's fee"; under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"; and under 42 U.S.C. § 2000e-5(k), "[i]n any action or proceeding under [Title VII of the Civil Rights Act] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee." Fee awards to prevailing defendants under all three of these statutes are governed by the same standard: the court may award attorney's fees only if it finds that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co*, 434 U.S. at 421; *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *Sees*, 714 P.2d at 862. "In determining whether this standard has been met, a district court must assess the claim at the time the complaint was filed, and must avoid *post hoc* reasoning by

---

fees under § 12-341.01 might be appropriate were the breach of contract and the breach of the covenant of good faith and fair dealing claims, but he did not make his arguments regarding the due process claim explicitly or clearly. In any case, "where an issue is purely legal, and the other party would not be prejudiced, we can consider an issue not raised below." *Engquist v. Oregon, Dept. of Agriculture*, 478 F.3d 985, 996 n.5 (9th Cir. 2007). The question of whether the due process claim arises from contract is a "purely legal issue, the injection of which would not have caused the parties to develop new or different facts," *International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 732 -733 (9th Cir. 1986), and defendants do not contend that they would be prejudiced by our considering it.

concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Tutor-Saliba Corp.*, 452 F.3d at 1060 (quotation marks omitted).

The district court awarded fees for the following claims on the basis that they were frivolous, unreasonable, or without foundation: hostile work environment, false light/invasion of privacy, wrongful termination, and negligent or intentional infliction of emotional distress.[5] For each of these claims, Harris challenges the district court's determination that fees were appropriate.[6]

*Hostile work environment based on gender and race*

Although Harris made a single claim alleging that he had been subjected to a hostile work environment on account of his race and gender together, the district court treated this

---

[5]It also found that Harris had asserted a frivolous disparate impact claim, because Harris failed to identify an outwardly neutral practice with a disparate impact on a protected class. *See* [Order at 12,] *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000). Harris's Amended Complaint, however, includes no disparate impact claim; it appears that he did not properly plead the elements of the claim because he did not make the claim in the first place. It is, however, not necessary to explore why the district court identified and passed judgment on a claim absent from the Complaint, as in the end it awarded no fees with respect to it. [Order at 28-29.]

[6]The district court found that the defendants could seek attorneys fees for Harris's pendant state law claims (in addition to his federal civil rights claims) under the civil rights fee statutes because these state law claims arose from a common nucleus of operative fact with a substantial federal claim. In order to reach that conclusion, the district court relied on a case from the Seventh Circuit, *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 271-72 (7th Cir. 1992). Whether fees are available to defendants for such claims under § 1988 and the other civil rights fee statutes is an open question in our Circuit. We do not address it here because Harris failed to challenge the district court's decision on this point. Accordingly, our discussion of these claims should not be read as an endorsement of *Munson*'s reasoning or of the district court's conclusion.

claim as two separate claims, one concerning race, one concerning gender. It found that Harris's gender-based subclaim was frivolous because it was filed more than 300 days — the time limit imposed by Title VII — after the last act of discrimination alleged by Harris that the district court categorized as gender-based. It did not determine that his race-based subclaim was untimely —it apparently categorized acts within the 300 day window as race based — but that instead it was frivolous because he did not allege severe and pervasive conduct based on his race, as would be required for relief under Title VII.

[9] The district court erred in dividing the claim in two, and then treating half of it as frivolous because of Title VII's statute of limitations and half as frivolous for a substantive reason. Harris claimed that his work environment was hostile because of discrimination against him as a black male, not that he was discriminated against as a male and then suffered separate discrimination as a black person. [*See* Amended Complaint at 7.] It is perfectly plausible that gender and race could together give rise to discrimination in the manner Harris alleged: he claimed that false sexual harassment allegations were made against him and that action was taken on these false charges because of the combination of his race and gender. Prejudiced individuals have long promulgated a pernicious image of black men as sexual predators; a view that they do not hold with respect to men of other racial backgrounds or with respect to black women. *See, e.g.*, *Powell v. State of Alabama*, 287 U.S. 45 (1932). Courts, moreover, have properly shown solicitude for claims based on the intersection of different categories of discrimination. *See Jefferies v. Harris Co. Community Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) ("discrimination against black females [could] exist even in the absence of discrimination against black men or white women").

[10] Nevertheless, the district court did not err in determining that the hostile work environment claim as a whole was

frivolous. A hostile work environment claim requires *inter alia* "that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999). The discriminatory conduct that Harris alleged fell short of meeting this condition, and Harris himself did not allege that the condition was met. While Harris's allegations of discrimination were sufficient to make out a prima facie case of disparate treatment under Title VII, they were obviously insufficient for a hostile work environment claim.

[11] Although the court may not have erred in determining that the claim was frivolous, it nonetheless erred in awarding substantial fees to defendants on this claim. Almost every time entry in defendants' fee petition for work related to the hostile work environment claim was also listed as related to some or all of Harris's nonfrivolous discrimination claims. As we have already explained, in a civil rights action with multiple claims, only some of which are groundless, a defendant is entitled only to those fees attributable exclusively to defending against plaintiff's frivolous claims. If the work is performed in whole or in part in connection with defending against any of plaintiff's claims for which fees may not be awarded, such work may not be included in calculating a fee award. Accordingly, the fees properly attributable to this claim, if any, would be quite minimal.

*False Light/Invasion of Privacy*

[12] The district court found Harris's false light/invasion of privacy claim frivolous because as a "limited purpose public figure [Harris] had no privacy interest in the allegations against him." [Order at 15.] A person employed by the government is only a "public official" with limited privacy interests when he holds a position that "has such apparent importance that the public has an independent interest" in his performance, "beyond the general public interest in the . . .

performance of all government employees." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966). Under Arizona law, such a public official cannot sue for false light invasion of privacy if the publication about which he complains relates to his performance of his public duties. *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 343 (Ariz., 1989).

**[13]** The district court found that it was obvious that Harris was a public official of the relevant sort, as opposed to an ordinary government employee. [Order at 15.] Its only support for this conclusion, however, was a set of cases concerning law enforcement officers, who are presumptively public officials. *See id.* ("Police and other law enforcement personnel are almost always classified as public officials."). Such cases are an insufficient basis on which to conclude that the issue raised by Harris — whether a hearing officer or similar low level judicial officer is so important a public employee that the public's interest in him is "beyond the general public interest in the . . . performance of all government employees" — has been answered "clearly by . . . precedent," as the district court was required to do before deeming the false light claim in this case frivolous. *See Gibson*, 561 F.3d at 929. Even in cases that do not involve civil rights, we have been extremely hesitant to find claims meritless; the bar is higher still when considering the claims of a plaintiff seeking vindication of his civil rights. *See Taylor AG Indus. v. Pure Gro*, 54 F.3d 555, 563 (9th Cir. 1995) (finding that a claim was not "wholly without merit" despite negative cases from seven other circuits and the Supreme Court because no case in this circuit had so held); *see also Hughes v. Rowe,* 449 U.S. 5, 16 & n.13 (1980) (the fact that a petitioner's claims, even where they failed to state a claim on which relief could be granted, warranted the "detailed" consideration of a seven page district court opinion indicated that they were not frivolous). Harris's false light claim did not in any way approach the level of futility required to treat its outcome as obvious and the claim as being without merit; instead, it presented a question that, so far as we are aware, has not been previously answered by

any court. Rather than being frivolous, it performed the salutary function of giving a court the opportunity to address a previously unanswered question.

*Wrongful termination*

**[14]** To prevail on a wrongful termination claim under Arizona law, a plaintiff must demonstrate that an employment relationship was terminated in violation of a state statute that does not provide its own remedy for statutory violations. *See* Ariz. Rev. Stat. § 23-1501(3)(b); *Taylor v. Graham County Chamber of Commerce*, 33 P.3d 518, 521-26 (Ariz. Ct. App. 2001). Harris identified as the only bases for his wrongful termination claim a federal statute and an Arizona statute that provides it own remedy for a statutory violation. Because the result of such a patently inadequate claim is obvious, the district court did not err by determining that it was frivolous. *See Gibson*, 561 F.3d at 929. Of course, the fees properly attributable to this claim, which placed on defendants only the burden of examining the basic legal requirements for such a claim, which are set forth on the face of the statute, would unquestionably be quite small.

*Negligent or intentional infliction of emotional distress*

**[15]** The district court relied on an erroneous legal standard to reach its determination that Harris's negligent infliction of emotional distress claim was frivolous. Arizona law requires that emotional distress "result[ ] in illness or bodily harm" in order to recover for negligent infliction of emotional distress. *Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979). According to the district court, Harris's claim was frivolous because he failed to allege in his complaint that he had suffered any physical injury; instead he alleged only that he had suffered "severe emotional distress." [Order at 18-19.] "Bodily harm," however, is a broader concept under Arizona law than might be suggested by the common usage of the term. In particular, it comprehends "substantial, long-term emotional

disturbances" unaccompanied by any physical injury, *see Monaco v. HealthPartners of Southern Arizona*, 196 Ariz. 299, 303 (Ariz.App. Div. 2 1999). Accordingly, Harris's invocation of "severe emotional distress" in his complaint appears sufficient as a matter of pleading.

**[16]** This sufficiency is, perhaps, reflected in the fact that defendants did not seek judgment on the pleadings as to this claim. [*See* Memorandum of Decision and Order, Oct. 7, 2005, p.8.] On that point, we note that it was unreasonable for the defendants to seek, and for the district court to grant, substantial attorney's fees on the ground that Harris failed to plead a required element of his claim when defendants failed to challenge the pleading as insufficient at an earlier point in the proceedings.

**[17]** The district court made a different but related error with respect to Harris's intentional infliction of emotional distress claim. The district court found this claim to be frivolous because "Plaintiff allege[d] in his Amended Complaint that he was falsely accused of sexual harassment, and that such allegations tarnished his reputation," and it was clear from the complaint that "this conduct was not sufficient to bring an IIED claim," which requires "extreme and outrageous" conduct by the defendants. [Order, Mar. 23, 2009 at 17-18.] Four years earlier, however, when deciding whether to grant the defendants judgment on the pleadings, the district court said of exactly the same claim, "Plaintiffs' allegations regarding Defendants' conduct, if true, may suffice for extreme and outrageous conduct." [*See* Memorandum of Decision and Order, Oct. 7, 2005, p. 8.] In *Christianburg*, the Supreme Court cautioned that district courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22. Here, the district court appears to have succumbed to the very understandable temptation of which the Supreme Court warned. The fee award as to this

claim cannot stand on the ground asserted by the district court.

### IV

**[18]** The district court also awarded defendants fees incurred in preparing their motion for attorneys fees. This court has held that fees can be recovered for preparing a motion for attorneys fees under 42 U.S.C. §§ 1988(b) and 2000e-5(k). *See McGrath v. County of Nev.*, 67 F.3d 248, 253 (9th Cir. 1995) (§ 1988(b)); *Manhart v. City of Los Angeles, Dept. of Water and Power*, 652 F.2d 904, 909 (9th Cir. 1981) (§ 2000e-5(k)). Similarly, Arizona law supports the recovery of attorneys fees for the preparation of a successful fee application. *See generally Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931-32 (Ariz. Ct. App. 1983). Such awards are, of course, subject to the same reasonableness determination as all other attorneys fees awards, including considering the results obtained by the party seeking the award. *See Blanchard*, 489 U.S. 91 n.5. On remand, the district court shall evaluate whether fees for defendants' fee motion are still proper in light of this opinion, and the amount of fees that ultimately should be awarded, if any.

### V

Harris also challenges the district court's award of nontaxable expenses. Defendants sought $53,533.66 in nontaxable expenses such as computerized legal research, factual investigation, and photocopying. The district court, noting that expenses are not available under Arizona Revised Statute § 12-341.01, *see Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach*, 973 P.2d 106, 109 (Ariz. 1999), awarded expenses for the claims that it designated as not arising from a contract. Because defendants did not break down their expenses on a claim by claim basis, the district court simply "pro-rated" defendants' expenses: by the district court's count, two and one-half of Harris's ten claims were contract-

based, and seven and one-half were not, so the district court awarded defendants 75% of the expenses that they reported.

**[19]** Harris does not challenge the potential availability of expenses to a prevailing defendant as part of an attorney fee award under Arizona Revised Statute § 41-1481(J) and 42 U.S.C. §§ 1988 and 2000e-5(k). He does, however, correctly contend that expenses are recoverable only as "part of the award of attorney's fees," *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir 1994), and thus that defendants may recover their out-of-pocket expenses only with respect to claims for which attorney's fees were recoverable — in other words, Harris's frivolous claims, and not simply all of his non-contractual claims. The district court, accordingly, erred by awarding expenses with respect to claims for which no award of attorneys fees was appropriate.

**[20]** Additionally, the district court erred in its equal division of expenses across claims. Again, because expenses are part of the attorneys fees award, they are recoverable only on the terms on which attorneys fees are recoverable. Thus, only those expenses are recoverable that the defendants can demonstrate were incurred solely with respect to frivolous claims and that would not have been incurred in whole or in part with respect to any of the nonfrivolous claims.[7] Defendants' expense petition, which does not allocate defendants' substan-

---

[7]We note, additionally, that the expenses submitted by defendants were woefully lacking in detail. For instance, although the invoices from Investigative Research, Inc. submitted by defendants ran into the thousands of dollars, the claims for which these expenses were incurred were not identified, and nowhere in the application for expenses was there a description of the work performed by Investigative Research, Inc. other than the notation "for professional services rendered" on the invoice from the company. This showing falls short of the requirement that a party seeking to recover expenses submit a "task-based" statement in which it "identif[ies] each related nontaxable expense with particularity" so that such expenses can be verified. *See* District of Arizona, Local Rule of Civil Procedure 54.2(d), (e).

tial expenses to the claims for which they were incurred, is plainly insufficient.

## VI

Harris's briefs are scattershot affairs containing numerous issues, many of which are insufficiently developed. Those issues that we have not previously addressed lack merit. Only one requires any discussion. Harris contends that because we denied defendants attorneys fees for his appeal of the dismissal of the underlying action, the district court was barred from awarding attorneys fees by the law of the case doctrine. Our prior decision not to award attorneys fees to defendants for Harris's appeal of the district court's award of summary judgment in favor of defendants included no determination that would bar an award of attorneys fees by the district court for the underlying case; we simply exercised our discretion and declined to award fees for work done on appeal. *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

## VII

For the reasons stated above, we vacate the award of attorneys fees and remand to the district court for further proceedings consistent with this opinion.

### VACATED AND REMANDED

---

BYBEE, Circuit Judge, concurring in the judgment in part, but mostly dissenting:

In *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055 (9th Cir. 2006), we held that "attorney's fees may be awarded to a defendant in a [civil rights] action when frivolous claims are joined with claims that are not frivolous." *Id.* at 1063. What we gave in *Tutor-Saliba*, we take away today.

The majority holds that civil rights cases trigger an additional level of scrutiny of defendant's claims to attorney's fees—scrutiny beyond requiring them to prove that the plaintiff's claims were "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Relying entirely upon its own conception of "civil rights policy," the majority fabricates a new rule: "In a civil rights case, such as this one, the pro-rata allocation of general fees . . . is impermissible." Maj. Op. at 1095; *see also id.* at 1098. Henceforth, a defendant may not recover attorney's fees unless it can prove that "fees would not have been [incurred] *but for* the inclusion of non frivolous claims." *Id.* at 1097 (emphasis added). The majority has so whittled away at defendants' right to receive attorney's fees that defendants should reconsider whether any recovery is possible. *See* Maj. Op. at 1097 ("the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry"). I disagree with this double bonus to civil rights plaintiffs because it is extralegal and counterproductive, not only for reasons that "go to the heart of our civil rights policy," *id.*, but for reasons that go to the heart of the administration of justice.

The majority joins the short side of an existing circuit split that is currently before the Supreme Court. The First, Fifth, Seventh, and Eleventh Circuits have held that defendants in civil rights cases may recover attorney's fees even when the plaintiff's frivolous claims are intertwined with nonfrivolous claims. *See Ward v. Hickey*, 996 F.2d 448 (1st Cir. 1993); *Fox v. Vice*, 594 F.3d 423 (5th Cir. 2010), *cert. granted*, 131 S. Ct. 505 (Nov. 1, 2010) (No. 10-114); *Curry v. A.H. Robins Co.*, 775 F.2d 212 (7th Cir. 1985); *Quintana v. Jenne*, 414 F.3d 1306 (11th Cir. 2005); *Head v. Medford*, 62 F.3d 351 (11th Cir. 1995). The one clear outlier is the Sixth Circuit, which has adopted a rule that a prevailing defendant may not recover attorney's fees if the plaintiff has raised even one nonfrivolous claim. *See Balmer v. HCA, Inc.*, 423 F.3d 606, 616-l7 (6th Cir. 2005). The majority does not agree outright with any

of these circuits—thus enabling the split—but its position is closest to the Sixth Circuit's plainly unreasonable rule. We can anticipate further guidance from the Court when it decides *Fox*, a case in which it recently granted a writ of certiorari.[1]

Although, as I explain, I concur in the judgment in part, I respectfully disagree with the majority's reasoning and the bulk of its judgment.

I

Vernon Harris held an at-will position as an Initial Appearance Hearing Officer (or Commissioner) with Maricopa County Superior Court. Within five months of his appointment, Harris was under investigation for complaints that he had engaged in inappropriate conduct toward female staff and using court staff for his personal correspondence. After the Superior Court determined that Harris had violated the canons of judicial ethics and engaged in unprofessional conduct, the Superior Court gave him the option of resigning or being fired. He resigned.

Harris then brought suit against the Superior Court, the Arizona Supreme Court, and Maricopa County (collectively, "Maricopa County"). He accused the defendants of various forms of breach of contract, wrongful termination, infliction of emotional distress, violation of privacy, race discrimination, and hostile work environment based on race or gender.

---

[1] The two issues presented in *Fox* are

1. Can defendants be awarded attorney's fees under § 1988 in an action based on a dismissal of a claim, where the plaintiff has asserted other interrelated and nonfrivolous claims?

2. Is it improper to award defendants all of the attorney's fees they incurred in an action under § 1988, where the fees were spent defending nonfrivolous claims that were intertwined with the frivolous claim?

All ten of his claims were eventually dismissed, we affirmed that judgment, and the defendants sought attorney's fees under Arizona and U.S. law. The defendants sought roughly $316,000 in fees with almost $54,000 in costs. The district court awarded attorney's fees under Arizona law for two and a half claims based on contract. Of the remaining seven and a half civil rights claims, the district court found that all were non-meritorious, but only four were frivolous. Faithfully following *Christiansburg*, the district court held that Maricopa County could only recover fees on Harris's frivolous claims. The court reduced the fees requested by the County by apportioning time between the compensable and non-compensable claims. In an exercise of its equitable discretion, the district court further decided that it would not award fees for a frivolous disparate impact claim because it was sufficiently related to disparate treatment and retaliation claims, which, although not meritorious, were not frivolous. Using the lodestar method, the court calculated the fees, with various adjustments, at about $171,000. The court declined to enhance the lodestar and then reduced the lodestar by roughly 50 percent because of the plaintiff's financial hardship, although finding that "some award of attorney's fees is necessary to serve as a deterrent, or to ensure that future defendants and the courts are not saddled with frivolous and unsuccessful claims." Ultimately, the court awarded the defendants $85,500 in attorney's fees and $40,150.53 in costs. The attorney's fees represent about 27 percent of the fees requested.

## II

The majority opinion errs in multiple ways, but in this way first: it flatly misstates the standard of review and then applies the wrong standard all the way down. We have long held that we review the district court's determination of attorney's fees *for abuse of discretion. See Tutor-Saliba Corp.*, 452 F.3d at 1059. This standard applies to all aspects of our review, including review of the district court's decision to award fees under Arizona state law, *Chevron U.S.A. Inc. v. Schirmer*, 11

F.3d 1473, 1480 (9th Cir. 1993); the district court's decision that particular claims are "groundless" or "unreasonable" under state law, *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002); the district court's decision to award fees under § 1988, *Benton v. Oregon Student Assistance Com'n*, 421 F.3d 901, 904 (9th Cir. 2005); the district court's decision that constitutional claims are frivolous, *Tutor-Saliba Corp.*, 452 F.3d at 1061; the district court's decision to award fees for the preparation of the motion for attorney's fees, *McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995); and the district court's decision concerning the manner in which to calculate the awarded fees, *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Cairns*, 292 F.3d at 1156-57.

Despite our clear precedent, the majority is unwilling to give way to the district court on anything: "[t]he principal issues in this case are legal in nature and therefore reviewed de novo." Maj. Op. at 1094. The majority apparently derives this de novo standard of review from what has become boiler-plate language in attorney's fees opinions: "Elements of legal analysis and statutory interpretation that figure into the district court's attorney's fees decision are reviewable de novo." *Tutor-Saliba Corp.*, 452 F.3d at 1059, quoting *Richard S. v. Department of Developmental Services of State of California*, 317 F.3d 1080, 1086 (9th Cir. 2003), citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000), citing *Corder v. Gates*, 104 F.3d 247, 249 (9th Cir. 1996), quoting *Kilgour v. City of Pasadena*, 53 F.3d 1007, 1010 (9th Cir. 1995), *quoting Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1051 (9th Cir. 1991), quoting *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985). We have never cited the boilerplate as a stan-dalone standard of review in attorney's fees cases.

Rather, de novo review is the standard for a narrow range of legal issues that help define the scope of the district court's discretion. As the Supreme Court explained the standard: the district court "necessarily has discretion in making" the deter-mination about how to calculate the attorneys' fee award, but

that this discretion "must be exercised in light of the considerations we have identified." *Hensley*, 461 U.S. at 437. Our cases demonstrate that we have reviewed certain issues in fee awards de novo when they relate to some "element[ ] of legal analysis." *Cabrales*, 935 F.2d at 1052 (reviewing the district court's denial of fees based on its decision that it was legally precluded from awarding fees); *see also, e.g.*, *Hall*, 768 F.2d at 1150, 1151 (reviewing the district court's holding that sovereign immunity did not preclude it from awarding interest on attorney's fees).

Whatever these "elements" may be, it is clear that the method of fee calculation is not such an element and that the proper standard of review is for abuse of discretion. *See Hensley*, 461 U.S. at 432; *Cairns*, 292 F.3d at 1156-57.

## III

The majority establishes a new rule for prevailing defendants who seek attorney's fees in cases in which at least one claim is based on the civil rights laws. I have two objections. First, I generally object to the majority, in effect, double counting the burden successful defendants must bear. Second, I specifically object to the "but for" test the majority creates.

## A

I disagree that prevailing defendants' ability to recoup attorney's fees in civil rights cases should be burdened beyond that called for by existing case law. Section 1988 itself does not distinguish between the right of prevailing plaintiffs and that of prevailing defendants to recover attorney's fees. 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce [civil rights laws], the court, in its discretion, may allow the *prevailing party* . . . a reasonable attorney's fee") (emphasis added). For pro-civil rights policy reasons, the Supreme Court later restricted *prevailing defendants*' access to attorney's fees, allowing them only for the defense of "friv-

olous, unreasonable, or . . . foundation[less]" claims. *Christiansburg*, 434 U.S. at 421. Thus, "expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus undercutting the efforts of Congress to promote the vigorous enforcement of the civil rights laws," Maj. Op. at 1096 (internal quotations omitted), after *Christiansburg*, defendants *unlike plaintiffs*—can only recover their attorneys costs in exceptional circumstances, for frivolous claims.

Once defendants have shouldered the extraordinary burden of demonstrating that plaintiffs' claims were not just meritless, but frivolous, they are entitled to attorney's fees on the same basis as everyone else. There is no justification in § 1988 for imposing a double burden on defendants. And we should not apply the Supreme Court's policy considerations where it has not, including to our review of the *manner* in which district courts allocate fees. When we do so, we hamper the district court's ability to make equitable decisions to accommodate the on-the-ground realities of litigation with which we are much less familiar. In addition, we risk rewarding plaintiffs for raising groundless and frivolous litigation against cash-strapped defendants like Maricopa County, who must then spend their limited funds defending against unreasonable claims. We risk straining the capacities of defendants to prevent and redress real civil rights grievances. Even our own policy interests are not served by hindering the district court's ability to require plaintiffs like Harris to bear the costs of clogging our courts with groundless and frivolous litigation. *See Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266, 269 (7th Cir. 1992) ("[W]hen a civil rights suit is lacking in any legal or factual basis . . . , an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation.") (alterations in original) (citations omitted). Finally, the majority's decision diminishes legitimate civil rights claims by suggesting that we cannot even distinguish between nonfrivolous and outright frivolous claims and

that anyone filing a civil rights claim may play by a different set of rules from everyone else.

Our decision here conflicts with the decisions of at least four other circuits. Although these cases have acknowledged that the difficulty of calculating attorneys' fee awards in cases in which frivolous and nonfrivolous civil rights claims are intertwined, they concluded that defendants are not precluded from receiving an award. Accordingly, the First, Fifth, Seventh, and Eleventh Circuits have held that prevailing defendants must be allowed to recoup the cost of defending against frivolous civil rights claims, even if those claims are interrelated with nonfrivolous ones.

In *Ward*, 996 F.2d 448, the First Circuit expressly held that the interrelatedness of frivolous and nonfrivolous claims may *not* be used as a reason to deny attorney's fees to prevailing plaintiffs in civil rights cases. *Id.* at 455. The circuit court reversed the district court's denial of attorney's fees because of the lower court's "reliance on the interrelated claims doctrine," a doctrine that enables a court to grant a fee award "includ[ing] fees for work performed on unsuccessful claims if that party's unsuccessful claims are interrelated to the successful claims by a common core of facts or related legal theories." *Id.* The First Circuit held that the district court had improperly relied on the doctrine, denying *all* fees to the prevailing defendants and allowing "frivolous civil rights claims [to] waste judicial resources that would otherwise be used for legitimate claims." *Id.* The First Circuit concluded: "[A] district court should not deny fees for defending frivolous claims merely because calculation would be difficult." *Id.* at 455-56. The circuit court remanded to the district court for recalculation. *Id.* at 456.

When presented with the question of an attorneys' fee award for interrelated frivolous and nonfrivolous civil rights claims, the Fifth Circuit agreed with the First Circuit. In *Fox v. Vice*, 594 F.3d 423 (5th Cir. 2010), *cert. granted*, 131 S. Ct.

505 (Nov. 1, 2010) (No. 10-114), the Fifth Circuit held that "a defendant does not have to prevail over an entire suit in order to recover attorney's fees for frivolous § 1983 claims" because requiring otherwise "would undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims without consequences merely because those claims were joined with additional non-frivolous claims." *Id.* at 428 (quoting *Tutor-Saliba Corp.*, 452 F.3d at 1064 (quoting *Quintana*, 414 F.3d at 1312)) (internal quotation marks omitted). Quoting from our opinion in *Tutor-Saliba Corp.*, the Fifth Circuit noted, "[s]uch a rule would also make a defendant's entitlement to attorney's fees 'depend not upon a district court's review of the merits of a plaintiff's § 1983 claims, but upon how a plaintiff chose to draft his complaint.' " *Id.* at 428-29 (quoting *Tutor-Saliba Corp.*, 452 F.3d at 1064).

The Seventh Circuit has adopted a similar position on fee awards for interrelated frivolous and nonfrivolous civil rights claims. In what may be the earliest circuit opinion on this issue, *Curry*, 775 F.2d 212, the Seventh Circuit affirmed a district court decision granting fees to prevailing defendants in a civil rights case, even though the claims for which the defendants merited fees were interrelated with other claims "which might not properly be characterized as frivolous." *Id.* at 220. The Seventh Circuit reasoned that such fees were merited because "to be a prevailing party under § 1988, a party need not prevail on all issues if a significant one is resolved in its favor." *Id.* (alteration, quotation marks, and citations omitted).

Likewise, the Eleventh Circuit has repeatedly held that prevailing defendants must be able to recover fees associated with the defense of frivolous civil rights claims, even if those claims are interrelated with nonfrivolous ones. *See Quintana*, 414 F.3d at 1312; *Head*, 62 F.3d 351. In *Quintana*, the Eleventh Circuit affirmed the district court's decision to award fees for a claim of retaliation, which the court had found was frivolous, but reversed the district court's decision to award

fees for a claim of discrimination, which the court had found to be not frivolous. The Eleventh Circuit made clear, however, that it was *not* holding "that a civil rights defendant may receive attorney's fees for an unsuccessful claim that is not frivolous" because "[s]uch a holding would frustrate the goal of Congress that the provisions of Title VII be enforced vigorously." *Quintana*, 414 F.3d at 1312.[2] Rather, in *Quintana*, the Eleventh Circuit relied upon its own precedent in *Head*, which established that it was the province of the district court to "properly . . . weigh and assess the amount of attorney's fees realistically attributable solely and exclusively to the plaintiff's" frivolous claims. 62 F.3d at 356. Thus, in the Eleventh Circuit it is well established that although prevailing defendants may not recover the costs of defending against nonfrivolous civil rights claims, they *must* recover the costs of defending against frivolous ones, which apportionment the district courts are equipped to make, even in cases in which the compensable claims are interrelated with non-compensable ones.

Each of these circuits—the First, Fifth, Seventh, and Eleventh—allow prevailing defendants to recover the costs of defending against frivolous civil rights claims under circumstances such as those presented to us today. In fact, so have we. *See Tutor-Saliba Corp.*, 452 F.3d at 1064. In holding to the contrary, the majority has rejected our own precedent, as well as the reasoning of a majority of other circuits.[3]

---

[2]Based upon the Eleventh Circuit's reasoning, on remand the district court conducted a pro rata calculation—"split[ting] a majority of the billing entries in half because defense counsel spent an equal amount of time in defending against both Plaintiff's [nonfrivolous] claims (Counts I and II) and [frivolous] claims (Counts [III] and IV)"—which stood without appeal. *Quintana v. Jenne*, Report and Recommendation on Defendant's Motion for Attorney's Fees and Additional Costs, 0:00-cv-07878, Doc. 138 at 2 (S.D. Fla. Dec. 29, 2005), *adopted by* 0:00-cv-07878, Doc. 139 (S.D. Fla. Jan. 27, 2006). I suggest that this sort of pro rata calculation was well within the district court's discretion in *Quintana*, as it is here.

[3]The only circuit holding to the contrary is the Sixth Circuit, and it bars such awards outright. *Balmer v. HCA, Inc.*, 423 F.3d 606, 616-l7 (6th Cir.

Inasmuch as the majority opinion imposes an additional burden on prevailing defendants in civil rights cases—beyond that imposed by *Christiansburg* and in contravention of our precedent and the majority of circuits—I respectfully disagree.

B

Once prevailing defendants have carried their heavy burden of establishing that plaintiff's claims are frivolous, they should be entitled to attorney's fees on the same basis as prevailing plaintiffs. The manner in which the district court awards fees to parties who are entitled to fees for some claims, but not other claims, is committed to the district court's sound discretion. In general, a district court does not abuse its discretion when it makes a pro rata allocation of fees. The majority's new "but for" rule has never been our rule.

In *Cairns*, 292 F.3d 1139, we held that a district court may make a pro rata allocation of general fees. We affirmed the district court's decision to make two pro rata allocations: first, as between publicity and trademark claims, and second, as among the trademark claims. As to the first allocation, the district court found that because the right of publicity claim was held on interlocutory appeal while the trademark claims

2005) ("[I]n this circuit attorneys' fees may not be awarded to defendants where the plaintiff has asserted at least one non-frivolous claim"). The Second Circuit's rule is more ambiguous and may be specific to the case. *See Colombrito v. Kelly*, 764 F.2d 122, 132 (2d Cir. 1985) ("Since the [§ 1983 and § 1985(3)] claims were closely intertwined and since the continuation of the § 1983 claim past discovery had only scant effect on the time and other resource costs of the litigation, the defendants would not be entitled to an award of fees even if the continuation of the § 1983 past discovery were frivolous."). We noted *Colombrito* in *Tutor-Saliba Corp.* and rejected it in favor of the Eleventh Circuit's reasoning in *Quintana*. *See* 452 F.3d at 1063-64.

required full litigation, it was more appropriate to allocate one-quarter of the general fees to the publicity claim and three-quarters to the trademark claims. *Id.* at 1158. As to the second allocation, the district court found that because one of the three trademark claims was unreasonable and was therefore not recoverable, *id.* at 1156, it was appropriate to reduce the trademark claim fee allocation by about one-third, or thirty percent. *Id.* at 1156. The district court then reduced the award based on other equitable considerations. *Id.* at 1158-59.

In *Cairns*, we held that this divvying—including the district court's decision to divide unspecified general fee money into two parts, because there were two categories of claims, and then to divide one of those halves into three parts, because there were three sub-claims—was not an abuse of the district court's discretion to apportion fees on a claim-by-claim basis. Indeed, we "cautioned . . . . that 'the impossibility of making an *exact* apportionment [between compensable and non-compensable claims] does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment.' " *Id.* at 1157 (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000)). Relying expressly upon that affirmation, the district court here did what the *Cairns* district court did—it used its discretion to divide pro rata the unspecified general fee money among the various claims, to "reflect an apportionment" *as a starting point* for further equitable accommodations. *Id.*

The majority opinion argues that *Cairns* is not relevant—and is therefore not precedential—because *Cairns* "was not a civil rights case, and thus did not implicate our longstanding policy of solicitude for civil rights plaintiffs, and our insistence that they be required to reimburse defendants only for fees incurred in defense against 'exceptional[ly]' unwarranted claims." Maj. Op. at 1098. This argument is smoke and mirrors. Although *Cairns* was not a civil rights case, it was a Lanham Act case, which, like civil rights cases, allows prevailing defendants to be reimbursed for attorney's fees only

"in *exceptional* cases," meaning cases that are "groundless, unreasonable, vexatious, or pursued in bad faith." *Cairns*, 292 F.3d at 1156 (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999) (quoting *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997))). Though this language differs slightly from that applicable to civil rights cases—the Lanham Act affords fees for claims that are "groundless, unreasonable, vexatious, or pursued in bad faith," *id.*, where only claims that are "frivolous, unreasonable, or without foundation" can give rise to attorney's fees for defendants in civil rights cases, *Christiansburg*, 434 U.S. at 421—the difference does not seem to be meaningful for purposes of distinguishing *Cairns* from civil rights cases. In my view, *Cairns* should control our discussion here.

We get into this discussion about *Cairns* and the allocation of general fees, of course, because the defendants did not provide claim-specific documentation for all of their fees. Defendants do have a responsibility to "establish[ ] entitlement to an attorney's fees' award." *Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) ("The burden of establishing entitlement to an attorney's fees award lies solely with *the claimant*.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (emphasis added)). But unlike the majority, who believes such a responsibility grows out of civil rights policy considerations and therefore may affect plaintiffs and defendants differently, I recognize that this burden is always imposed on the fee claimant, whether plaintiff or defendant.

Although this case may not require that we decide what a *plaintiff's* burden for documentation would be, *see* Maj. Op. at 1096-97 n.1, the majority seizes this reprieve to impose an asymmetrical burden on defendants. It adopts an unprecedented, burdensome "but for" documentation rule: "Accordingly, a defendant must demonstrate that the work for which it asserts that it is entitled to fees would not have been performed but for the inclusion of the frivolous claims in the

complaint." Maj. Op. at 1097 (emphasis added). The majority itself expressly acknowledges that, under its punishingly strict formulation of the principle, "the burden on the defendant . . . is from a practical standpoint extremely difficult to carry." Maj. Op. at 1097. This heightened burden on defendants originates with the majority. It does not grow out of the relevant statutory language or case law, neither of which indicate that —except for the *Christiansburg* exception to what kinds of claims merit fees for defendants—plaintiffs and defendants are to be treated differently in their application for fee awards. 42 U.S.C. § 1988; *Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). For this reason, I disagree with the majority opinion insofar as it imposes a documentation burden on the defendants that would not be applied likewise to a prevailing plaintiff.

I recognize that awarding a party fees despite its failure to provide claim-specific documentation risks allowing that party to be reimbursed for non-compensable claims. But this is a problem that affects both plaintiffs and defendants within the civil rights context (and without). And, for that reason, as it is one with which district courts are repeatedly confronted, I would defer to the district court's discretion to determine that the fees awarded in this case were an appropriate measure of the work done defending the compensable claims.

IV

After jerry-rigging the law and applying an unstatutory documentation rule against the prevailing defendants, the majority applies microscopic scrutiny to the district court's decision. Although I disagree with the majority's effort to nickel-and-dime to death defendants' award, I do agree that two of the district court's actions deserve remand. I present my claim-specific concerns and concurrences below. I address the contract claims first and then the civil rights claims.

A

Under Arizona law, ARS § 12-341.01(A), courts can award "reasonable attorney fees" to the prevailing party in a "contested action arising out of a contract." Based on this state statute and the seven factors identified by the Arizona Supreme Court as being relevant to such a discretionary award, *see Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985), the district court awarded the defendants attorney's fees for two and a half claims it determined arose out of contract: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; and (3) the due process property interest half of count nine in Plaintiff's Amended Complaint. It found that the contract claims were frivolous because Harris did not have a contract. The due process claim was similarly infirm because Harris was an at-will employee and thus lacked a potential property interest in his employment.

The majority agrees that the contract claims are frivolous but vacates the award anyway. Maj. Op. at 1102. It reasons that "under Arizona law it is impermissible to require a plaintiff to pay fees that a prevailing defendant incurred in whole or in part defending against nonfrivolous civil rights claims." Maj. Op. at 1098 (citing *Sees v. KTUC, Inc.*, 714 P.2d 859, 862 (Ariz. App. 1985)). The problem with this statement is that it is false. The majority has conflated its own, new civil rights attorney's fees rule with Arizona's contractual claims attorney's fees rule. The *Sees* case deals with fees under ARS § 41-1481(J) and ARS § 12-341.01(C), neither of which are contract-related attorney's fees provisions. Here, the Superior Court sought—and the district court awarded—fees for contract-based claims under ARS § 12-341.01*(A)* (emphasis added), which was not at issue in *Sees* and was not there burdened with the civil rights policies at issue in *Sees*. Therefore, all of the majority's cites to *Sees* in its contract claims analysis are inapposite. In relying upon *Sees*, the majority has pro-

jected its own new civil rights rule onto Arizona contract law. There is no precedent in Arizona for the majority's move.

The majority also vacates the due process claim award because the plaintiff may have referenced a "liberty interest in being free from defamation" in addition to his "property interest in continued employment." Maj. Op. at 1102-03 n.4. I say "may have" because the majority acknowledges that Harris did not contest the due process award "explicitly or clearly," but decides to reach out for these issues anyway because the "issue is purely legal." *Id.* Here, again, the majority misstates both the standard of review and the law. We are reviewing for abuse of discretion, and when the issue involves such questions as whether a claim is frivolous and whether the plaintiff even contested it, the issue is not "purely legal." *See Tutor-Saliba Corp.*, 452 F.3d at 1061; *Cairns*, 292 F.3d at 1156.

In any event, the majority ignores or fails to acknowledge that even Harris's liberty interest due process claim required proof of an employment contract, or some other "right or status recognized by state law," for it to be successful. As we made clear in *Wenger v. Moore*, 282 F.3d 1068, 1074 (9th Cir. 2002), "injury to reputation standing alone does not violate the Due Process Clause of the Fourteenth Amendment . . . . Rather, due process protections apply only if a plaintiff is subjected to 'stigma plus.' " Stigma plus requires that the allegedly defamatory statement have been "made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Id.* In other words, Harris needed both evidence of defamation *and* evidence that he was terminated or otherwise experienced an alteration in some "right or status recognized by law." Here, Harris was not terminated; he resigned. Therefore, Harris must have been relying upon the "alteration of some right or status recognized by state law" language for his liberty interest due process claim. In this case, Harris could not identify what he was relying upon as a "right or status recognized by

state law." The majority doesn't identify one either. For my part, I cannot think of what "right or status recognized by state law" the plaintiff's liberty interest due process claim would rest on, other than the alleged contract. Because the plaintiff's liberty interest due process claim must have relied upon his alleged right to employment, the district court did not abuse its discretion in lumping together the plaintiff's property and liberty interest due process claims, identifying them as being contract-based, and awarding fees for them under § 12-341.01(A). I would affirm the attorney's fees awarded under ARS § 12-341.01(A).

B

With respect to the civil rights claims, I agree with the majority that the fee awards for the federal civil rights claims under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and ARS § 41-1481(J) can be construed under a common standard. *See Hewitt v. Joyner*, 940 F.2d 1561, 1572 (9th Cir. 1991); *Sees*, 714 P.2d at 862. There are eight claims here: (1) hostile work environment; (2) race discrimination; (3) false light/invasion of privacy; (4) wrongful termination; (5) negligent and intentional infliction of emotional distress; (6) defamation; (7) equal protection[4]; and (8) tortious interference with a business relationship. In addition, Maricopa County requested fees for the work required to file its motion for attorney's fees. I will address each of these nine fee requests in turn.

1

I disagree that it was an abuse of discretion for the district court to divide Harris's hostile work environment claim into two claims: one relating to his race and one relating to his gender. The majority transmogrifies these tort claims into a unified race-and-gender theory, for which it cites a 1932

---

[4]Although equal protection is listed here as one claim, it actually represents one half of count nine in Harris's First Amended Complaint.

Supreme Court case and a 1980 Fifth Circuit case—neither of which was ever cited by the plaintiff. Maj. Op. at 1105 (*citing Powell v. State of Alabama*, 287 U.S. 45 (1932), and *Jefferies v. Harris Co. Community Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980)). The majority's disagreement with the district court's treatment of this claim is another example of the majority's failure to remember its task: review for abuse of discretion the district court's determination of the *frivolousness* of the plaintiff's claims. Ultimately our disagreement on this point is irrelevant, however, because the majority concedes that even as transmogrified, the plaintiff's claim was frivolous. As to the frivolousness of the claim, I agree, for the reasons offered by the district court.

I disagree, however, with the majority's decision to vacate the hostile work environment fee award *despite its agreement that the claim was frivolous*. Here, the majority employs its novel "but for" award requirement, holding that because "[a]lmost every time entry in defendants' fee petition for work related to the hostile work environment claim was also listed as related to some or all of Harris's nonfrivolous discrimination claims," the district court improperly awarded fees. Maj. Op. at 1106. But the unfairness of the majority's new rule is manifest here. Maricopa County has satisfied its heavy *Christiansburg* duty and shown that Harris's claims are not only non-meritorious, but frivolous. That entitles it to attorney's fees on the same basis as if it had been a prevailing civil rights plaintiff. The only remaining question is how to apportion the attorney's fees, and as to that question, we had previously approved the method the district court employed. *See Tutor-Saliba Corp.*, 452 F.3d at 1063-64; *Cairns*, 292 F.3d at 1157. It is only because the majority has created a new, nearly impossible hurdle for Maricopa County that it reverses the award. But under any fair reading of our prior law, the district court did exactly what it should have and there was no abuse of discretion.

2

Like the majority, I do not think it was an abuse of discretion for the district court not to award fees for the race discrimination claim.

3

I agree with the majority that whether a hearing officer is a public official was a novel question under Arizona state law and that, at the outset of the litigation, it was not clear from existing precedent that the plaintiff should have known he did not have an enforceable privacy interest. The majority is correct to point out that none of the case law relied upon by the district court as to this holding relates to low-level judicial officers; rather, it all relates to law enforcement officials. Although the district court's reasoning about why a hearing officer is a limited purpose public figure may be sound, I agree with the majority that it was not frivolous for the plaintiff to claim that, as a hearing officer, Harris was not a limited interest public figure where such a claim had never before been decided by a relevant court. I agree with the majority that the award for the false light/invasion of privacy claim should be vacated.

4

I agree with both the district court and the majority that the wrongful termination claim was frivolous for the reasons articulated by the district court. Unlike the majority, however, I would not direct the district court to change its methodology in calculating the wrongful-termination-related portion of the fee award. Maj. Op. at 1108 ("Of course, the fees properly attributable to this claim . . . would unquestionably be quite small."). I am persuaded that, by its discussion of *Cairns*, the district court acknowledged the potential problem with awarding the same amount of fees for two claims that were litigated to different extents and properly exercised its discretion:

"While the fees were not allocated equally between the claims in *Cairns*, the Court finds that Defendants' equal allocation between Plaintiff's ten claims is appropriate in this case." [E.R. 25.] As *Hensley* makes clear, "the district court has discretion in determining the amount of a fee award," which discretion "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." 461 U.S. at 437. Though the majority might have made a different decision, it was not an abuse of discretion for the district court to award equal fees to this as to the other fee-recoverable claims.

5

I disagree with the majority as to the negligent infliction of emotional distress claim, but I agree as to the intentional infliction of emotional distress claim.

With respect to the negligent infliction of emotional distress claim, the majority is wrong—the district court did *not* apply "an erroneous legal standard" by requiring that emotional distress "result in illness or bodily harm in order to recover for negligent infliction of emotional distress." Maj. Op. at 1108 (internal citations omitted). It is the majority that has misstated Arizona law. First, as the district court pointed out, Arizona has long required proof of illness or bodily harm. *See Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979); *Ball v. Prentice*, 781 P.2d 628, 630 n.1 (Ariz. App. 1989). Second, the majority relies upon *Monaco v. HealthPartners of Southern Arizona*, 196 Ariz. 299, 303 (Ariz. App. 1999), for the proposition that " 'substantial, long-term emotional disturbances' unaccompanied by any physical injury" can give rise to an NIED claim. Maj. Op. at 1108-09. The majority misreads *Monaco*. The plaintiff in *Monaco* suffered physical manifestations of his anxiety, including profound trouble sleeping, teeth grinding, and nightmares, and was diagnosed with post-traumatic stress disorder. *Id.* at 303. More impor-

tantly, Arizona cases subsequent to *Monaco* have required a showing of bodily harm for an NIED claim under Arizona state law, just as the district court said was required. *See Loza v. American Heritage Life Ins. Co.*, 2010 WL 716322, at *6 (D. Ariz. Feb. 25, 2010) ("To establish a claim for negligent infliction of emotional distress, [the plaintiff] must prove physical injury."); *State Farm Mutual Automobile Insurance Co. v. Connolly*, 212 Ariz. 417, 423 (Ariz. App. 2006) ("[T]he plaintiff in a negligent infliction of emotional distress action must prove not just emotional distress, but a physical injury that results from the emotional distress"). As the district court found in this case, the plaintiff only alleged "general claims of 'severe emotional distress.' " These general and unsubstantiated allegations do not meet Arizona's standard for a showing of emotional distress, and it was not an abuse of discretion for the district court to find the NIED claim frivolous and award fees.

With respect to the intentional infliction of emotional distress ("IIED") claim, I agree with the majority that it was an abuse of discretion for the district court to find that the IIED claim was frivolous, but I disagree as to why. The district court found the IIED claim frivolous because "the Plaintiff knew or should have known that his IIED claim" was not sufficient as it was based solely on allegations, which "Arizona courts have typically found [are] alone not enough to constitute" an IIED. But, as the majority notes, the district court itself had ruled in an earlier part of the litigation that the alleged conduct could be "extreme and outrageous," as is required for an IIED claim. Maj. Op. at 1109. This casts doubt on the district court's later determination that the claim was frivolous. Without an explanation of why it changed its position—from holding that "Plaintiffs' allegations regarding Defendants' conduct, if true, may suffice for extreme and outrageous conduct" to holding that "Plaintiff knew or should have known that his IIED claim was frivolous"—the district court's fee determination reads like the kind of "post hoc reasoning" the Supreme Court cautioned against in *Christians-*

*burg*. 434 U.S. at 421-22 (italics omitted). Therefore, although I agree with the majority that the IIED award should be vacated, I would remand with instructions that, if the district court wanted to reinstate the award for this claim, it should explain the apparent divergence in its holdings and why, its earlier holding notwithstanding, the plaintiff's claim was sufficiently frivolous as to merit attorney's fees. *See Hensley*, 461 U.S. at 437 ("It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.").

### 6-8

It was not an abuse of discretion for the district court to find that the defamation, equal protection, and tortious interference with a business relationship claims were not frivolous and did not merit fee awards. I agree with the majority that, as to these determinations, the district court's decision should stand.

### 9

I strongly disagree with the majority's decision to vacate the award for the defendants' preparation of their motion for fees. Maricopa County is plainly a prevailing defendant, entitled to fees under Arizona and U.S. statutes and the Court's opinion in *Christiansburg*. I would affirm the district court's fee motion award in full.

### C

The final money award at issue is the partial award of expenses to the defendants. Because ARS § 12-341.01(A) does not provide for expenses on the contract-based claims, and because the district court determined that 2.5 of the claims were contract-based, the district court did not award 25 percent of the defendants' expenses. I agree with the majority that this decision to exclude expenses for the contract-based

claims was supported by law and was not an abuse of discretion. With respect to the expenses awarded, I believe the district court must make adjustments for the false light/invasion of privacy and intentional infliction of emotional distress, for reasons I have explained.

I disagree with the majority's decision to reverse the district court's pro rata allocation based on the majority's novel "but for" award rule. Because I disagree with the majority that the district court's pro rata allocation is invalid, I also disagree with the majority that the district court's pro rata allocation of expenses is invalid. I would find that the district court did not abuse its discretion by using a pro rata allocation of expenses, though, as discussed, it abused its discretion by awarding expenses to the defendants for work defending two claims that were not fee recoverable.

V

In sum, the majority makes two critical errors: First, it reviews the "principal issues" in this case under a de novo standard of review, when it should have reviewed all of the appealed issues for abuse of discretion; and second, it creates a new, nearly insurmountable hurdle for prevailing defendants to seek fees. Despite some agreement with the majority as to the claim-by-claim analysis—i.e., I would vacate the awards for the false light/invasion of privacy and IIED claims, remand the expenses award for recalculation—I vigorously dissent from the remainder of the judgment. I would thus affirm the judgment in large measure.