**NOT FOR PUBLICATION**

MAY 22 2017

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| CELIA RUMANN; MICHAEL O'CONNOR, | Nos. 14-15621 |
| | 14-16032 |
| Plaintiffs-Appellants, | |
| | D.C. No. 2:13-cv-01107-SRB |
| v. | |
| | MEMORANDUM[*] |
| PHOENIX SCHOOL OF LAW, LLC, a Delaware limited liability company; INFILAW HOLDING, LLC, a Delaware limited liability company, | |
| Defendants-Appellees. | |

Appeals from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted February 12, 2016
San Francisco, California

Before:     TASHIMA and W. FLETCHER, Circuit Judges, and BASTIAN,[**]
District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Stanley Allen Bastian, United States District Judge for the Eastern District of Washington, sitting by designation.

Appellants Michael O'Connor and Celia Rumann are husband and wife who were previously employed as tenured professors by Appellee Phoenix School of Law, LLC ("PSL"). In 2013, after PSL withdrew its tenure offer to them for the 2013-2014 academic year, Appellants initiated this action alleging breaches of contract and of the implied covenant of good faith and fair dealing. The district court dismissed their Second Amended Complaint ("SAC") and subsequently awarded attorneys' fees to PSL. Appellants challenge both of these rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291,[1] and we affirm.

PSL's employment policies are set forth in Chapter II of its Faculty Handbook. In relevant part, § 2.2.4 provides that a tenure contract is:

> for an academic year and gives the faculty member the contractual right to be re-employed for succeeding academic years until the faculty member resigns, retires, is discharged for adequate cause, is terminated pursuant to a

---

[1]    After we heard oral argument, we remanded this appeal to the district court "for the limited purpose of determining whether it had subject matter jurisdiction at the time it entered its order of dismissal, and, if not, whether such lack of jurisdiction can be cured by amendment, dismissal of any non-diverse defendant, or otherwise." On limited remand, the district court concluded that, at the time it dismissed the SAC, it lacked subject matter jurisdiction because Defendant InfiLaw Holding, LLC, had a non-diverse member. The district court further reasoned, however, that it could cure this defect by dismissing InfiLaw as a party, which it did. Thereafter, the parties filed supplemental briefs, which included Appellants' objections to the district court's determination with regard to subject matter jurisdiction. Because we are not persuaded the district court erred, we affirm its conclusion as to the jurisdictional defect and its adopted remedy. Accordingly, we now turn to the merits of the instant appeal.

2

reduction in force, becomes disabled, or dies, but subject to the terms and conditions of employment which exist from academic year to academic year. Tenure status is defined by the terms of this Faculty Handbook and a tenure contract and does not exist apart from a legally subsisting contractual agreement.

Additionally, § 2.2.5 sets forth a form contract, which expressly states that the contract "contains the entire agreement between [PSL] and the Employee," and that "[a]ny changes of any kind in the employee's acceptance of this Contract shall constitute a counter-offer and shall automatically nullify the offer extended herein."

Prior to the 2012-2013 academic year, Appellants each received and executed an employment contract for a tenured position. These contracts were nearly identical to the Faculty Handbook's form contract. They contained a provision whereby PSL's Dean and Faculty Development Committee would "conduct an extensive review of each tenured faculty member" every four years, as set forth in the Faculty Handbook.

In the lead up to the 2013-2014 term, PSL opted to issue "Appointment Letters" to returning faculty in place of the earlier "lengthy contracts." The Appointment Letters stated that Appellants were being offered positions as "Professor[s] of Law" and that these were "tenure" positions. Additionally, the Appointment Letters incorporated by reference Chapter II of the Faculty

Handbook. And, in an accompanying cover letter and email, PSL represented that the Appointment Letters "do[] not contain any fewer protections, rights, and responsibilities than the previous contracts issued to returning faculty."

Appellants declined to sign the tendered Appointment Letters. Instead, they challenged as inadequate the Appointment Letters' incorporation of Chapter II of the Faculty Handbook – and, consequently, the form contract – on grounds that the form contract left certain material terms blank. Appellants wrote back to PSL that "[t]o ensure . . . a complete contract that reflects all material terms of the contract, and avoid any confusion regarding those material terms," they were enclosing their own form of an employment contract that purportedly complied with § 2.2.5. They requested that PSL execute their proposed contract no later than May 17, 2013. On May 20, 2013, PSL responded by withdrawing the respective offers of employment to Appellants. This action followed.

1. Appellants contend that the district court erred in dismissing their breach of contract claim because the Appointment Letters purportedly breached their 2012-2013 employment contracts and the Faculty Handbook in a number of ways.

A. Appellants first object that the Appointment Letters neither adhered to the content of the Faculty Handbook's form contract, nor specified

4

whether they were "tenure contracts" as defined in § 2.2.4 of the Faculty Handbook. But the Appointment Letters fully incorporated Chapter II of the Faculty Handbook, including the form contract, and expressly stated that Appellants were being offered "full time 'tenure' position[s]."

Second, Appellants argue that the Appointment Letters used ambiguous terms – such as "appointment" and "tenure-track position" – that were inconsistent with PSL's assertion that the Appointment Letters offered tenure positions. Thus, they contend, the Letters effectively amounted to a demotion.

Even assuming these specific references are ambiguous, however, Appellants' proposed interpretation of the Appointment Letters is unreasonable. As noted, the Appointment Letters expressly state that the positions being offered are "full time 'tenure' position[s]." This has the effect of resolving any latent ambiguity that might otherwise have existed. And contrary to Appellants' position, the Faculty Handbook does not use the term "appointment" exclusively in relation to non-tenured positions. For example, § 2.1.4.2, which concerns "administrative faculty," provides that "[a]dministrators who are hired with *or appointed to tenure status* in the faculty shall retain their status during term of their administrative position employment unless otherwise agreed." (Emphasis added.)

5

Finally, under Arizona law, a contract must be "read in light of the parties' intentions as reflected by their language and in view of all the circumstances." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 398 (Ariz. 1984) (internal quotation marks omitted). Accordingly, "the interpretation of a negotiated agreement is not limited to the words set forth in the document," but also depends on "[e]vidence of surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like . . . to interpret the meaning of the provisions contained in the agreement." *Id.* Here – where it is undisputed that Appellants achieved tenure status in 2010 and 2011, where the parties entered into a tenure employment contract for the 2012-2013 term, and where PSL represented that the Appointment Letters did not reduce the "protections, rights, and responsibilities" established in "previous contracts" – the surrounding circumstances render Appellants' proposed interpretation unreasonable.

**B.** Appellants next argue that the Appointment Letters' incorporation of the Staff Employee Handbook amounts to a breach of contract because it could subject them to termination without warning or cause, which, according to Appellants, is "a complete repudiation" of their existing tenure rights. This argument misses the mark. The Staff Employee Handbook applies primarily

to non-faculty staff positions.  And, contrary to Appellants' argument, the Appointment Letters' incorporation of the Staff Employee Handbook does nothing suddenly to render its provisions applicable to tenured faculty.  This conclusion is consistent with Chapter II of the Faculty Handbook, which distinguishes between faculty and staff, and the express language of the Appointment Letter, which draws the same distinction.

**C.**     Appellants further argue that the Appointment Letters ran afoul of their 2012-2013 employment contracts by failing to include a separate provision for post-tenure review.  This argument fails because the Appointment Letters expressly incorporated Chapter II of the Faculty Handbook, which includes the tenure review provision at § 2.5.6.  Moreover, the fact that this provision was amended in October 2012 – to extend the period between reviews from four to five years – does not support a different conclusion.  This is made clear by the express language of the Appointment Letters, which incorporate "Chapter II of the Faculty Handbook, *as they may be modified from time to time*." (Emphasis added.)  Accordingly, the Appointment Letters did, in fact, include a post-tenure review provision and expressly took into account the possibility of amendments to Chapter II of the Faculty Handbook.

**D.** Finally, Appellants contend that PSL's decision to withdraw their employment offers was itself a breach of contract. According to Appellants, by virtue of their tenured status, they had a "right to continuous employment until resignation, retirement, death[,] or dismissal for cause." Therefore, they argue, when PSL effectively terminated them without cause, it breached both their 2012-2013 employment contracts and Chapter II of the Faculty Handbook. This argument fails. The form contract in the Faculty Handbook provides that "[a]ny changes of any kind in the employee's acceptance of this Contract shall constitute a counter-offer and shall automatically nullify the offer extended herein." Appellants' 2012-2013 employment contracts included the same statement. After refusing to sign the Appointment Letters, Appellants proposed an employment contract that differed from the Appointment Letters in at least one significant way.[2] Because "[a]ny changes of any kind in the employee's acceptance" had the effect of "automatically nullify[ing] the offer," PSL was not in breach when it withdrew its offer for the 2013-2014 term.

---

[2] Specifically, Appellants' proposed contract set August 19, 2013, as the date on which retroactive salary increases would take effect. In contrast, the Appointment Letters and the 2012-2013 employment contracts set that date at August 1.

**2.**     Appellants raise many of the same arguments in support of their contention that the district court erred in dismissing their cause of action for breach of the implied covenant of good faith and fair dealing.  They contend that PSL impaired their right to receive the contractual benefits of "continuous employment" and "protection against dismissal without cause or process."  PSL achieved this result, Appellants contend, by falsely representing that the Appointment Letters contained the same rights and responsibilities as the 2012-2013 employment contracts, unilaterally changing material terms of the Faculty Handbook's form contract, and creating a pretext for withdrawing the offer of employment.  These arguments fail for the same reasons set forth above:  the Appointment Letters incorporated the relevant provisions of the Faculty Handbook and expressly stated that the positions being offered were tenured, and Appellants' counteroffer had the effect of automatically nullifying PSL's offer.  Accordingly, there is no basis for concluding that PSL breached the implied covenant of good faith and fair dealing.

**3.**     Finally, Appellants challenge the district court's award of attorneys' fees to PSL.  The district court awarded $41,739.75 in fees pursuant to Ariz. Rev. Stat. § 12-341.01, which provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  Section 12-341.01 "vest[s] discretion in the trial court to determine

the circumstances appropriate for the award of fees." *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). When awarding such fees, the trial court should consider several factors, including whether the unsuccessful party's claim was meritorious, whether the litigation could have been avoided or settled, and whether imposing fees would cause extreme hardship. *See Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 974 n.3 (9th Cir. 2011) (listing the *Associated Indemnity* factors).

Appellants contend that the district court erred in its consideration of the *Associated Indemnity* factors and abused its discretion when it analyzed the billing records of PSL's attorneys. Neither of these arguments is persuasive. The district court correctly identified and reasonably applied the *Associated Indemnity* factors. In doing so, it committed no legal error. Moreover, the court carefully reviewed PSL's billing records, reduced the fees as necessary to account for disputed time entries and inadequate billing descriptions, and it reasonably calculated the fees award. There was no abuse of discretion.

• ● •

We affirm the district court's: (1) dismissal of InfiLaw Holdings as a party-defendant; (2) dismissal of the SAC; and (3) award of $41,739.75 in attorneys' fees to PSL.

10

In each of these appeals, the judgment of the district court is **AFFIRMED.**